Opinion issued February 21, 2013



In The

# Court of Appeals

For The

# First District of Texas

———————————————

NOS. 01-11-00957-CV
01-13-00008-CV

———————————————

**MARK H. PINE, Appellant**

**V.**

**CATHERINE DEBLIEUX, Appellee**

**✳ ✳ ✳ ✳**

**JENNIFER H. PINE, Appellant**

**V.**

**CATHERINE DEBLIEUX, Appellee**

———

**On Appeal from the County Court at Law Number 4**
**Brazoria County, Texas**
**Trial Court Case Nos. PR-030352 and PR-030352A**

## O P I N I O N

In this probate case, (1) appellant Jennifer Pine challenges the trial court's Final Judgment on Petition for Declaratory Judgment, incorporating several interim rulings related to property of the deceased, Robert Pine,[1] and (2) appellant Mark Pine's counsel challenges the trial court's imposition of sanctions.[2]

We affirm the sanctions and reverse and remand the final judgment to the trial court.

### JENNIFER PINE V. DEBLIEUX

Robert Pine (Pine) died intestate. While Mark Pine (Pine's son) was serving as Independent Administrator of Pine's estate, appellee Catherine deBlieux (Pine's daughter) filed a Petition for Declaratory Judgment claiming, among other things, individual ownership in a Certificate of Deposit (the P.O.D. Account) and a certain rights under a purported trust (World Trading Trust) created by her father during his lifetime. Shortly thereafter, Mark resigned and the trial court appointed deBlieux as Successor Administrator over the objection of Pine's other children, Robin Pine and appellant Jennifer Pine. Robin and Jennifer claimed that all the children knew that their father used numerous trusts and property transfers to his children's names to keep assets out of his name with the understanding that he still owned the property. Accordingly, Robin and Jennifer argued that deBlieux's

---

[1]     trial court number PR-030352; appellate court number 01-13-00008-CV
[2]     trial court number PR-030352A; appellate court number 01-11-00957-CV

claiming individual title to 40% of their father's property rendered her unsuitable to represent the estate against those same claims.

After deBlieux was appointed administrator, she individually filed a motion for summary judgment on her declaratory judgment action, seeking a ruling about what property was subject to probate and a declaration that the P.O.D. account and rights under the World Trading Trust passed to her outside of probate. The estate did not respond to deBlieux's motion (as deBlieux also was the representative of the estate as administrator), but Jennifer and Robin filed a response, arguing that deBlieux had abandoned the estate because of her conflict of interest and contending that fact issues existed about the ownership of the properties that deBlieux sought.

### A. This Court's Prior Opinion

Jennifer and Robin appealed to this Court, arguing that the trial court abused its discretion by appointing deBlieux as Successor Administrator of Robert Pine's estate because she has an active conflict of interest that renders her unsuitable as a matter of law. We agreed, bringing our Court in line with the other courts of appeals that have considered the issue:[3]

---

[3]    In each of these cases finding a disqualifying conflict, as here, the excluded executor or administrator claimed disputed assets as his or her own to the exclusion of an estate, as opposed to seeking title as beneficiaries through the probate process. *See, e.g.*, *Ayala v. Martinez*, 883 S.W.2d 270, 272 (Tex. App.—Corpus Christi 1994, writ denied) (recognizing that surviving spouse was

3

In this case, there exists a real dispute over the validity of deBlieux's individual claims to ownership of substantial assets of her father's such that her "personal interests are so adverse to those of the estate [and] the beneficiaries . . . that both cannot be fairly represented by the same person." *Bays*, 622 S.W.2d at 149 (quoting *Haynes*, 257 S.W.2d at 792). Accordingly, we sustain Jennifer's and Robin's point of error and hold that deBlieux's nontestamentary claims to property owned by Pine upon his death render her unsuitable as a matter of law to serve as administrator. The trial court thus abused its discretion in appointing her as such.

*Pine v. deBlieux*, 360 S.W.3d 45, 51 (Tex. App.—Houston [1st Dist.] 2012, pet. denied).

Although our opinion issued July 14, 2011, because deBlieux filed motions for rehearing and en banc reconsideration in this Court (which were denied), and then a petition for review in the supreme court (which was denied) our mandate did not issue until November 21, 2012.

---

unsuitable to administer deceased husband's estate because she claimed property from her deceased husband's separate estate as community property); *Bays v. Jordon*, 622 S.W.2d 148, 148–49 (Tex. App.—Fort Worth 1981, no writ) (holding the trial court abused its discretion by granting letters testamentary to a joint venturer with the decedent who claimed substantially all of the estate's assets by virtue of a written agreement with the testator creating rights of survivorship in their joint ventures); *Hitt v. Dumitrov*, 598 S.W.2d 355, 355–56 (Tex. Civ. App.—Houston [14th Dist.] 1980, no writ) (affirming trial court's disqualification of person from administrating wife's estate because the estates of husband and his wife, who died together in a plane crash, had adverse claims to the same insurance proceeds such that the administrator could not advocate for both estates against each other effectively); *Haynes v. Clanton*, 257 S.W.2d 789, 790, 792 (Tex. Civ. App.—El Paso 1953, writ dism'd) (affirming trial court's determination that administrator was unsuitable because he owned an interest in a bank that had sued the estate to recover all of the assets of the estate that the bank alleged were purchased with money embezzled from the bank).

4

## B. Further Proceedings in the Trial Court

Shortly after our opinion issued, Jennifer and Robin again sought to have deBlieux replaced as administrator based on our holding that conflicts of interests rendered her unsuitable to serve as administrator as a matter of law. The trial court denied that request. After the trial court signed an October 23, 2011 final judgment into which several earlier orders merged—including an order concluding that the P.O.D. account and the World Trading Trust that deBlieux claimed title to were nontestamentary assets—Robin and Jennifer Pine filed a motion for new trial. Among other things, the motion challenged the court's decision to award deBlieux these assets "to the exclusion of the estate, despite the fact that, as administrator, she was duty bound to defend the estate's interests in those assets." The motion reasoned that, while this Court's opinion had not become technically final, the trial court should not render a final judgment disposing of Robert Pine's assets with deBlieux serving as administrator in light of our ruling she was unsuitable as a matter of law. The trial court denied that motion as well, and Jennifer appealed.

## B. Issues in Jennifer Pine's Appeal

Appellant Jennifer Pine identifies the "central issue presented [a]s whether the trial court may undertake acts contrary to and/or that constitute an interference with the Court's judgment, after the judgment is issued but before the trial court

receives a mandate." Her appellant's brief presents the following specific related sub-issues:

1. "Whether the trial court erred in denying Appellant's motion for removal of Appellee as administrator on the basis of the Court's judgment of 7/14/11?"

2. "Whether the trial court erred in denying Appellant's motion for an order requiring Appellee to undertake discovery of the facts surrounding the overseas trust claimed by Appellee?"

3. "Whether the trial court erred in granting a summary judgment awarding deBlieux, individually, the certificate of deposit and the overseas trust."

4. "Whether the trial court erred in granting its final judgment on 9/23/11 without a qualified administrator being appointed to defend the estate."

In response, deBlieux argues that the court's orders were not erroneous, and designates the following issues as cross-points:

1. "Jennifer's appeal should be dismissed for violation of the briefing rules"

2. "Jennifer should be sanctioned for filing a frivolous appeal"

**C. Parties' Arguments**

Jennifer's arguments focus on the effect of this Court's July 11, 2011 opinion and judgment before our mandate issued on November 21, 2012. Jennifer insists that the opinion was "law of the case" on the date of the judgment, i.e., July 14, 2011, because the supreme court has admonished that "if an appellate court expressly states the time for its decision to take effect, that statement controls."

6

*Edwards Aquifer Auth. v. Chem. Lime Ltd.*, 291 S.W.3d 392, 393 (Tex. 2009). She argues that as a result of our prior opinion, the trial court's judgment in its entirety should be reversed, as it was awarded without a qualified administrator willing to conduct discovery or defend the estate.

In response, deBlieux contends that our prior decision did not become law of the case before the trial court's final judgment was rendered because only "questions of law decided on appeal to a court of last resort will govern the case throughout its subsequent stages." *Hudson v. Wakefield*, 711 S.W.2d 628, 630 (Tex. 1986). Because, she argues, our prior opinion was "not the decision of the court of last resort" while her petition was pending in the supreme court, the law of the case doctrine simply does not apply.

She also points to section 28 of the Texas Probate Code, which states, "Pending appeals from orders or judgments appointing administrators or temporary administrators, the appointees shall continue to act as such and shall continue the prosecution of any suits then pending in favor of the estate." TEX. PROB. CODE ANN. § 28 (Vernon 2003). According to deBlieux, section 28 "specifically authorizes [her] to continue to act as successor administrator pending the appeal of her appointment and to prosecute any suits on behalf of the estate, including the suit for declaratory judgment to which the personal representative of the estate was a party." She contends that she "properly prosecuted the declaratory judgment suit

by filing the motions for summary judgment and the probate court properly acted on those motions."

DeBlieux further argues that Jennifer cannot challenge on appeal the trial court's interlocutory orders (1) denying her motion to remove deBlieux as administrator, or (2) denying her motion to require deBlieux to conduct discovery on behalf of the estate. Specifically, DeBlieux contends that Jennifer waived complaint about the removal order by failing to appeal it immediately, and that the denial of a discovery order is simply not appealable.

According to deBlieux, "the sole issue" properly on appeal is "whether the probate court correctly determined that the P.O.D. account and the World Trading Trust are nontestamentary in nature and therefore not part of Mr. Pine's estate subject to administration," which she contends "has nothing to do with" the issue of her suitability as administrator that we addressed in the prior case.

Finally, deBlieux argues that the trial court's judgment should be affirmed because it correctly determined that the P.O.D. account and World Trading Trust were nontestamentary.

**D. Analysis**

As a preliminary matter, we disagree that the scope of this appeal is as narrow as deBlieux urges. She argues that Jennifer's failure to file a separate notice of appeal of the trial court's denial of her motion to remove deBlieux as

8

administrator waived complaint about that ruling on appeal. As support, she cites Texas Rules of Appellate Procedure 25.1, which requires a notice of appeal be filed to invoke the appellate court's jurisdiction. She also argues that Jennifer cannot complain on appeal about the trial court's denial of her motion requesting that deBlieux be ordered to conduct discovery on behalf of the estate about the World Trading Trust, citing *Crowson v. Wakeham*, 897 S.W.2d 779, 781–82 (Tex. 1995) for the proposition that the trial court's denial of the discovery motion is an interlocutory order that is not appealable.

Jennifer filed a timely notice of appeal from the trial court's final judgment and the denial of her motion for new trial. Under well-settled principles, the interlocutory orders denying her motion to remove deBlieux as administrator and requesting that the court order deBlieux to conduct discovery merged into the court's final judgment and are properly before us now on appeal. *E.g.*, *Roccaforte v. Jefferson Cnty.*, 341 S.W.3d 919, 924 & n.10 (Tex. 2011) (citing *Webb v. Jorns*, 488 S.W.2d 407, 408–09 (Tex. 1972) (holding that interlocutory judgment merged into final judgment, which was then appealable)). Nothing deBlieux cites supports her contention otherwise. Jennifer has not waived her complaints about these two interlocutory orders.[4]

---

[4] Making a similar argument, diBlieux asks us to dismiss Jennifer's appeal for allegedly inadequate briefing. She contends that the only issue properly on appeal is whether the trial court correctly determined her ownership rights in the P.O.D

9

We now turn to the crux of Jennifer's argument—i.e., that the trial court should not have rendered final judgment with deBlieux serving as administrator of the estate. We agree, and accordingly reverse and remand the trial court's judgment.

DeBlieux insists that the trial court could not have erred by refusing to remove her as executor after we issued our opinion holding she was unsuitable as a matter of law because our mandate had not issued, and because the "law of the case" doctrine was not applicable until she had exhausted her appeal to the supreme court. She also relies on the Texas Probate Code's express provision that "Pending appeals from orders or judgment appointing administrators or temporary administrators, the appointees shall continue to act as such and shall continue the prosecution of any suits then pending in favor of the estate." TEX. PROB. CODE § 28.

The Texas Supreme Court recently noted that the relationship among an appellate court's opinion, judgment, and mandate, as well as the difference

account and the World Trading Trust in the final judgment. Because Jennifer argues that the trial court should have removed deBlieux as administrator and should have ordered discovery into the characterization of these assets, deBlieux contends that Jennifer has focused her arguments on the wrong issue and waived any complaint about the final judgment. Contrary to deBlieux's argument, we conclude that Jennifer has adequately briefed both (1) her complaints about denial of her motion to remove deBlieux and about the discovery order, and (2) her argument that the trial court's failure to replace deBlieux rendered the final judgment erroneous. We thus deny deBlieux's motion to dismiss.

between the date that a decision is effective versus when it is enforceable is "an aspect of Texas appellate procedure that could well benefit from more definite rules and procedures." *Edwards Aquifer Authority*, 291 S.W.3d at 402. Further clarity on this issue was left for another day, but one concurring justice opined that appellate decisions generally "should take effect on the date of the judgment," *Id*. at 406 (Brister, J., concurring), while another argued that "as a general matter the better default date is the mandate, the formal order declaring our review complete, our decision final, and our judgment enforceable." *Id*. at 412–13 (Willett, J., concurring). As Justice Brister observed, we are not often presented with this issue, because "we expect lower courts to follow our decisions without receiving an explicit order to do so." *Id*. at 408 (Brister, J., concurring).

The effective date of the mandate in an interlocutory appeal, like the one in which we reversed the trial court's appointment of diBlieux, is set forth in the rules of appellate procedure, and provide that the mandate is the operative date:

> The appellate court's judgment on an appeal from an interlocutory order takes effect when the mandate is issued. The court may issue the mandate with its judgment or delay the mandate until the appeal is finally disposed of. If the mandate is issued, any further proceeding in the trial court must conform to the mandate.

TEX. R. APP. P. 18.6.

Thus, deBlieux is correct that our opinion was not technically enforceable while she pursued further review of our decision. And she is also correct in her

11

assertion that, while the appeal was pending, the trial court was not required to remove her as administrator just because an appeal had been filed challenging that appointment. TEX. PROB. CODE § 28.

That said, once our opinion issued reversing the trial court's order appointing her as successor administrator and holding that she was unsuitable as a matter of law, deBlieux's continuing to resist removal in hopes that the supreme court would disagree with us was at her own peril. We reasoned that she was unsuitable because there existed a "real dispute over the validity of [her] individual claims to ownership of substantial assets of her father's" such that she could not effectively represent both her individual interests and the estate's, *Pine*, 360 S.W.3d at 51, which continues to hold true with equal force.

While DeBlieux contends that the trial court was not bound by our prior opinion before the mandate was issued, she does not otherwise address the substance of our prior opinion. She instead argues at length that the trial court's awarding her rights in the P.O.D. account and World Trading Trust was correct because the nontestamentary nature "of these assets is well settled in Texas." But this argument ignores that we have previously found that a legitimate dispute exists about the nature of these assets, especially given the peculiarities of Robert Pine's estate. Indeed, in deBlieux's brief, she herself acknowledges that the labels given particular assets have not been dispositive of their nature or ownership. She in fact

was able to get property that was titled in her siblings' names brought into Pine's probate estate for administration.

> During his lifetime, Mr. Pine arranged his assets and property in such a manner as to make it difficult to determine the extent of his property and the fact of his ownership of that property. Mr. Pine purportedly gifted certain real properties to one of his children without ever relinquishing control of the property. Although nothing was recorded, that property appears to have been reconveyed to Mr. Pine prior to his death. These properties were determined to be part of Mr. Pine's estate subject to administration. In addition, Mr. Pine held his assets, including bank accounts, mobile homes, and real property, in the names of approximately 49 different trusts. Of these so-called trusts, approximately 43 were in name only, with no written trust agreement. These so-called trusts were determined to be invalid for the reasons stated in the orders and the assets became part of Mr. Pine's estate subject to administration.

While deBlieux worked to ascertain the real nature of these various assets as the administrator, Jennifer has consistently argued that deBlieux's personal interest in the P.O.D. account and World Trading Trust prevented her from undertaking similar investigation regarding these assets. While we express no opinion on the ownership or characterization of these assets, we hold that—for all the reasons expressed in our prior opinion—it was error for the trial court to render a final judgment in this case without removing deBlieux and appointing a suitable administrator to represent the estate.

We thus reverse and remand the trial court's judgment. Because the court will need to assign a new administrator who can assess what investigation or discovery, if any, needs to be undertaken with regards to the P.O.D. account and

13

the World Trading Trust, we need not address whether the trial court erred in denying Jennifer's motion to require deBlieux to conduct discovery on behalf of the estate. Finally, we also reject deBlieux's request that Jennifer, the prevailing party here, be sanctioned for bringing an allegedly frivolous appeal.

## MARK PINE V. DEBLIEUX

On August 24, 2011, a status conference was held, where all parties agreed that the only remaining issue for trial on September 19, 2011 was appellant Mark Pine's quantum meruit claim for the value of his services to Pine in connection with running a mobile home park owned by Pine. During that hearing, someone from Mark's counsel's firm electronically filed and served a new counterclaim for breach of contract, based on the alleged breach of a Rule 11 agreement dated April 29, 2010.[5]

DeBlieux filed a motion to sever and motion for sanctions, arguing that Mark added the breach-of-contract counterclaim "in bad faith and for the purpose of delaying the trial scheduled for September 19, 2011." Mark filed a response arguing that the filing was not in bad faith, did not meet the standard for imposition of sanctions, and agreeing to severance of the breach-of-contract claim.

---

[5]     According to deBlieux, the Rule 11 issue had previously been resolved by the trial court, when it denied Mark's motion to enforce the Rule 11 agreement on May 19, 2011.

On August 31, 2011, the trial court held a hearing on deBlieux's motion. When asked by the court what evidence she had that Mark's counsel's filing was in bad faith, she responded:

> I think, frankly, the fact that—well, because he—the pleading was clearly drafted the day before. It was filed while we were all here—unless he's got an associate, but I can only assume that nothing would have been prepared and/or filed that was not at Mr. Harvey's direction—while we were all here arguing summary judgment—and at the status conference last week, it was being filed. And when we got back to the office—I think it came into my office at 10:36 or 10:37, so it had been filed at Mr. Harvey's direction while we were all here. . . . [I]it is obvious that Mr. Harvey knew about this, that I had instructed—I don't have—let me see—well, this was filed simultaneously with or immediately before Mr. Harvey represented to the court and to all counsel that the sole issue with the trial was going to be this quantum meruit claim that had been left from the summary judgment.

The court then gave Mark's counsel an opportunity to explain the representations he made at the status conference:

> COURT: All right. And so, explain to me why you didn't tell us when we were at the status conference that you had that counterclaim coming.
>
> COUNSEL: Because I wasn't prepared to argue the merits of the counterclaim.
>
> COURT: What, in your mind, do you think the purpose of a status conference is?
>
> COUNSEL: Well, based on the name of it, it would be to determine the status of a case.
>
> COURT: Why do you think we were all standing here discussing all of those matters?
>
> COUNSEL: Again, to determine the status of the case.

15

COURT: Uh-huh. And so, how is the court to determine the status of the case and perform my business and my duties that I need to perform if I don't have all the information in front of me?

COUNSEL: I don't have an answer for that.

COURT: All right.

The court asked each attorney at the hearing how much time had been spent preparing for the hearing, and about their hourly rate. The court then made the following announcement:

I am going to order that the new claim be severed and that Mark Pine pay the fees to the clerk so that we can have that entered into as a new cause of action. . . . . We're going to sever so we can go forward on our trial. The court is also going to find that Mr. Harvey—not his client—not Mark Pine—but Mr. Harvey needs to pay to each of the attorneys the amounts, the attorneys' fees.

. . . .

With regards to having to come to answer this, the record will speak for itself, the docket sheet, the file. We have been down here so many times. The court has accommodated the parties and tried to give you hearings so that these matters can be sorted out. We were here for what was probably the last time on August 24th, to set out all of the matters, to set out what was going to be tried, what was before the court, what was still remaining. There was lots of discussion; everybody was here for that purpose so that we didn't have to come back down here again. The court's schedule is very tight. I had to accommodate this hearing to get this matter resolved so we would all know what we were going to try, even though we had already been here once before to set that out.

The fact that you did not disclose to me or anybody else here prevented the court in carrying out its business; and as a sanction for that, I'm going to order that you pay those attorneys' fees, those each individual attorneys by September the 30th in the amount of: $1,552.50 for Ms. Thomas [attorney for Catherine deBlieux]; $2,450 to Mr. Payne [attorney for Jennifer Pine]; and $700 to Mr. Black

16

[attorney for Robin Sims].  And that would be paid by you, not your client.

On September 20, 2011, the trial court signed an order memorializing its decision severing Mark's breach-of-contract claim and ordering sanctions in the amounts announced at the hearing to be paid by David Harvey.

## A. Issues in Mark Pine's Appeal[6]

Harvey brings two issues on appeal:

1. "The trial court erred in granting Appellee's motion for sanctions."

2. "The trial court erred by entering a legally deficient order imposing sanctions."

DeBlieux filed an appellee's brief stating that the amount of sanctions at issue are not worth the cost of preparing a response, so she "chooses to make no further response to appellant's brief."

## B. Analysis

Harvey argues that both deBlieux's motion for sanctions and the court's order awarding sanctions were deficient such that reversal is required.

We review the trial court's imposition of sanctions under an abuse of discretion standard.  *See Kings Park Apartments, Ltd. v. Nat'l Union Fire Ins. Co.*, 101 S.W.3d 525, 540 (Tex. App.—Houston [1st Dist.] 2003, pet. denied); *Gaspard v. Beadle*, 36 S.W.3d 229, 239 (Tex. App.—Houston [1st Dist.] 2001, pet. denied);

---

[6] Although Mark is identified as the appellant, his counsel and the party actually sanctioned—David N. Harvey—filed the notice of appeal complaining of the trial court's sanctions order.

17

*Finlay v. Olive*, 77 S.W.3d 520, 524 (Tex. App.—Houston [1st Dist.] 2002, no pet.). "The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or equivalently, whether under all the circumstances of the particular case the trial court's action was arbitrary or unreasonable." *Koslow's v. Mackie*, 796 S.W.2d 700, 704 (Tex. 1990).

### 1. Motion for Sanctions

Harvey argues that deBlieux's motion is fatally defective in that it: (1) did not identify the specific authority under which she sought sanctions, (2) failed to argue that the sanctions have a direct relationship to his conduct and are not excessive, and (3) is not supported by attached evidence. Relatedly, he argues that the sanctions awarded to the attorneys for Jennifer Pine and Robin Sims likewise should be reversed, as they were not based on any pleadings.

In support, Harvey cites *Greene v. Young*, 174 S.W.3d 291, 300–01 (Tex. App.—Houston [1st Dist.] 2005, pet. denied) for the proposition that a trial court cannot impose sanctions on grounds that are not specifically identified in the motion seeking sanctions. In *Greene*, the motion for sanctions against the appellants identified specific conduct (i.e., the signing of a particular motion that contained allegedly false statements) and a specific statutory authority for the sanctions sought (i.e., Texas Rule of Civil Procedure 13, which allows for sanctions for knowingly making false statements in pleadings). 174 S.W.3d at

18

296. The trial court in *Greene* entered a sanctions order based not only on the signing of false pleadings, but on other conduct it deemed sanctionable, and based its sanctions on "its inherent power to sanction and on violations of Texas Civil Practice and Remedies Code Chapter 10, . . . the Texas Disciplinary Rules of Professional Conduct, . . . and the Texas Lawyers Creed." *Id*. at 297. Appellants complained in their motion for new trial that they were not given adequate notice of the unpleaded grounds that the court relied upon in imposing sanctions. *Id*. This Court reversed the sanctions, holding that appellants were not afforded adequate notice before they were sanctioned. *Id*.

*Greene* is distinguishable in several respects. Primarily, in *Greene*, the appellants were sanctioned for conduct different than that identified in the motion for sanctions, and we emphasized "that appellants had no notice that such conduct was under consideration for sanctions." In contrast here, diBlieux's motion identified the exact conduct that was the ultimate subject of the court's sanctions—failure to disclose information during the status hearing.

The trial courts' inherent power to discipline an attorney's behavior, including the ability to impose sanctions on its own motion in an appropriate case, has long been recognized. *See In re Bennett*, 960 S.W.2d 35, 40 (Tex. 1997) (per curiam) (orig. proceeding); *see also Metzger v. Sebek*, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ denied) ("Trial courts also have inherent

19

powers on which they may call to administer justice and preserve their dignity and integrity. This power includes the ability to sanction bad faith conduct that occurs during the course of litigation." (citation omitted)). Harvey acknowledges as much, recognizing in his brief that the trial court can assess sanctions based on its inherent authority *sua sponte*, but contends that "the court must provide notice to the party that it intends to rely on its inherent authority to sanction to allow the party to prepare a defense." According to Harvey, it "is undisputed that the trial court did not provide any notice to appellant that it intended to *sua sponte* sanction them under its inherent power."

Unlike in *Greene*, Harvey never objected to the trial court that he had inadequate notice of the basis of the court's sanctions. We conclude that Harvey had adequate notice of the conduct that formed the basis of the sanctions, and that he waived any complaint about inadequate notice of the basis for the sanctions. *E.g.*, *Valdez v. Valdez*, 930 S.W.2d 725, 728 (Tex. App.—Houston [1st Dist.] 1996, no writ) (holding complaint was waived on appeal, because appellant "never complained to the trial court that he had no notice that sanctions could be imposed against him; the first time this complaint is made is on appeal"); *Wilner v. Quijano*, No. 01-11-00322-CV, 2012 WL 5311147, at *4 (Tex. App.—Houston [1st Dist.] Oct. 25, 2012, no pet.) (mem. op.) ("Because [appellant] did not complain to the trial court about its *sua sponte* decision to impose sanctions upon him, the trial

20

court had no opportunity to correct the alleged error when it was in a position to do so,").[7]

We overrule Harvey's first issue.

### 1. Trial Court's Sanctions Order

Finally, Harvey contends that the trial court's sanctions order should be reversed because it does not contain an adequate description of the conduct supporting the statement or the basis for the sanction imposed. He also complains that no evidence supporting the trial court's awards was adduced at the hearing.

During the sanctions hearing, the court asked each attorney about their hourly rate and how much time they had spent preparing for and attending the hearing. Ms. Thomas, deBlieux's attorney, told the court that she had spent "[p]robably four, four and a half" hours at an hourly rate of $345. Mr. Payne, Jennifer's attorney, spent seven hours (including travel time) at $350 an hour. Mr. Black, Robin Sims' attorney, spent two hours at $350 an hour.

---

[7] We need not address Harvey's other complaints about the inadequacy of deBlieux's motion or his complaint that the award of sanctions to attorneys for Robin Sims and Jennifer Pine are not supported by pleadings in light of our conclusion that the sanctions were proper under the court's ability to *sua sponte* sanction. In any event, these complaints about inadequate pleading were also waived by the failure to object to the trial court. *Wilner*, 2012 WL 5311147, at *3 ("[W]hen an attorney fails to complain of the sanction imposed and fails to ask the trial court to reconsider its actions in imposing the sanction, the attorney waives any complaint about the trial court's actions.") (citing *Howell v. Tex. Workers' Comp. Comm'n*, 143 S.W.3d 416, 450 (Tex. App.—Austin 2004, pet. denied)).

21

The court stated on the record that Harvey's failure to disclose the counterclaim at the status hearing caused each party to incur additional time and fees attending the second hearing and "prevented the court in carrying out its business." Harvey did not complain in the trial court—and he does not argue here—that the court was not clear at the hearing about the basis for the sanctions or the conduct that it found sanctionable. He cites authority providing that a trial court's order must describe the sanctionable conduct and the basis for the sanction imposed, but omits that same authority provides that, "if a sanctioned party fails to object to the form of the order imposing sanctions or request that the grounds be specified therein, that party fails to preserve the issue for appellate review." *Jimenez v. Transwestern Prop. Co.*, 999 S.W.2d 125, 130 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Because Harvey did not ask the trial court for a more specific order, he has waived this complaint.

The trial court awarded to each attorney only fees for their time devoted to the additional hearing: $1,552.50 to Ms. Thomas, $2,450 to Mr. Payne, and $700 to Mr. Black. Harvey did not challenge the amount of these fees at the hearing, nor does he complain here that the attorneys' fees awarded were excessive. Instead, he argues only that the fees were not supported by sworn testimony at the hearing.

We review an award of sanctions only for an abuse of discretion. *Glass v. Glass*, 826 S.W.2d 683, 688 (Tex. App.—Texarkana 1992, writ denied) ("The

22

amount of attorney's fees awarded *as sanctions* for discovery abuse is within the sound discretion of the trial court and will only be set aside upon a showing of clear abuse of that discretion. Proof of the necessity or reasonableness of attorney's fees are not required when such fees are assessed as sanctions." (citations omitted)); *see also Miller v. Armogida*, 877 S.W.2d 361, 365 (Tex. App.—Houston [1st Dist.] 1994, writ denied) (rejecting argument that insufficient evidence supports award of attorney's fees as sanctions, because point was inadequately briefed and because '[w]hen attorney's fees are assessed as sanctions, no proof of necessity or reasonableness is required).  Harvey has not demonstrated an abuse of discretion.

We overrule Harvey's second issue.

## CONCLUSION

The trial court's sanctions against David Harvey are affirmed.  The trial court's final judgment is reversed and the case is remanded to the trial court for further proceedings consistent with this opinion.

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.