**AFFIRM in Part, REVERSE in Part, and RENDER;  Opinion Filed February 8, 2017.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00454-CV

## IN THE INTEREST OF W.B.B., A MINOR CHILD

**On Appeal from the 255th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DF-14-23119**

## MEMORANDUM OPINION
Before Justices Francis, Fillmore, and Stoddart
Opinion by Justice Fillmore

W.B.B.'s parents, Mother and Father, divorced in 2010.  Their agreed divorce decree enjoined both parties from allowing anyone with whom the party was romantically involved to remain overnight with the party while the party was in possession of W.B.B.  The injunction expired on January 31, 2015, which was W.B.B.'s eighth birthday, or when "a party" married, whichever occurred first.

Alleging Mother violated the injunction on twenty-eight occasions, Father requested the trial court find Mother in contempt.  The trial court denied the request because the injunction was "not clear, specific, and unambiguous as to the duties and responsibilities" and had expired prior to any of the alleged violations.  Finding that Father's request was groundless and filed for the purpose of harassment because he "hates" Mother, the trial court awarded Mother attorneys' fees of $5,000 as sanctions under rule of civil procedure 13.  In two issues, Father contends the trial court erred by determining the injunction had expired and by imposing sanctions.  We affirm the

trial court's judgment denying Father's request that it hold Mother in contempt, reverse the trial court's imposition of sanctions under rule of civil procedure 13, and render judgment that Mother take nothing on her motion for sanctions.

## Background

Mother and Father divorced on November 30, 2010, in Denton County, Texas. In the agreed nunc pro tunc divorce decree, Mother and Father were named joint managing conservators of W.B.B., with Father having the right to designate W.B.B.'s primary residence. The parties agreed to several "mutual injunctions," which the Denton County court incorporated into the divorce decree. As relevant to this appeal, the divorce decree provided:

> 65.    IT IS ORDERED AND DECREED that [Father] and [Mother] are mutually enjoined from allowing anyone with whom the party is romantically involved, to remain over night [sic] with that party while that party is in possession of the child. Overnight is defined from 10:00 p.m. until 7:00 a.m. This injunction shall remain in effect until January 31, 2015[,] or until a party marries, which ever event comes first.

January 31, 2015, was W.B.B.'s eighth birthday. Father married in February 2013.

At some point, Father filed a motion to modify the divorce decree.[1] The parties reached a mediated settlement agreement,[2] which the Denton County court incorporated into an October 24, 2013 order granting the motion to modify. As relevant to this appeal, the October 24, 2013 order allowed Father to designate the primary residence of W.B.B. within Dallas County or contiguous counties. It also provided:

> **6.    *Morality Clause/Injunction***
>
> IT IS ORDERED that the Morality Clause/Mutual Injunction contained in Paragraph 65 of the *Nunc Pro Tunc Final Decree of Divorce* shall remain in full force and effect, subject to the following caveats/exceptions:

---

[1] This pleading is not in the appellate record.

[2] This agreement is not in the appellate record.

a. If [Mother] should get remarried before the child turns eight (8) years old then the Morality Clause/Mutual Injunction shall be null and void and it is stipulated that this event shall be considered a material and substantial change in circumstances and:

  i. [Mother's] child support obligation shall increase to be in accordance with the Texas Child Support Guidelines as opposed to the 50% of guideline child support as ordered herein below; and

  ii. In addition to regular child support being adjusted to be in accordance with the Texas Child Support Guidelines, [Mother] shall also be responsible for payment of full cash medical support to reimburse [Father] for the costs of the child's health insurance premiums.

  iii. [Mother] shall notify [Father] of her remarriage with seven (7) days of such event regardless of whether or not the marriage is recognized by the laws of the State of Texas if she gets remarried before the child turns eight (8) years old.

With certain exceptions, Father and Mother were also enjoined from coming within fifty feet of each other; attempting to interfere with the other party's employment or the other party's significant other's employment; photographing or videotaping the other party or the other party's significant other; and making disparaging remarks about each other or the other party's family members within W.B.B.'s hearing. The case was transferred to the trial court after Father moved to Dallas County.

Father filed a motion for contempt based on Mother allegedly violating the fifty-foot rule and requested that Mother be sentenced to confinement in jail for each violation.[3] Father also filed a motion for back child support, asserting Mother had married.[4] Finally, on March 17, 2015, Father filed a Second Motion for Contempt for Violation of the Final Order in Suit to Modify the Parent-Child Relationship, alleging Mother violated the October 24, 2013 order by allowing her romantic partner to remain overnight on twenty-six occasions between November

---

[3] This pleading is not in the appellate record.

[4] This pleading is not in the appellate record.

–3–

16, 2013, and January 17, 2015, while Mother was in possession of W.B.B., and by "moving" W.B.B. into Mother's romantic partner's residence on February 21, 2015, without providing proper notice to Father. Father requested that Mother pay a fine of $500 for each violation and be placed on community supervision for up to ten years.

Mother denied the allegations and asserted the injunction could not be enforced by contempt because it was ambiguous and not clear and specific and failed to comply with rule of civil procedure 683 by incorporating another document.[5] Mother also alleged the pleading was filed for an improper purpose, specifically harassment, and requested that Father be sanctioned under chapter 10 of the civil practice and remedies code in an amount equal to the attorneys' fees Mother had incurred in defending the second motion for contempt.

On April 10, 2015, Father filed an Amended Second Motion for Contempt for Violation of the Nunc Pro Tunc Final Decree of Divorce and Final Order in Suit to Modify the Parent-Child Relationship alleging Mother's conduct violated both the divorce decree and the modification order. Father requested that, for each contemptuous act, Mother be jailed for up to six months, be ordered to pay a fine of up to $500, and be placed on community supervision for up to ten years. On February 25, 2016, Father amended the motion again, now titled Amended Third Motion for Contempt for Violation of the Nunc Pro Tunc Final Decree of Divorce and Final Order in Suit to Modify the Parent-Child Relationship (the second motion for contempt), alleging that, in addition to the previously alleged twenty-six violations, Mother violated the injunction by allowing her romantic partner to stay overnight on August 9, 2014, and on December 24, 2014, while Mother had possession of W.B.B., dropping the allegations that

---

[5] As relevant to Mother's argument, rule of civil procedure 683 requires an order granting an injunction to "describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restrained." TEX. R. CIV. P. 683.

Mother failed to provide proper notice to Father of her and W.B.B.'s residence, and deleting the request that Mother be confined in jail and placed on community supervision.

The trial court heard Father's second motion for contempt on March 2, 2016. Mother's counsel argued that the injunction expired when Father married in February 2013. The trial court orally ruled the terms of the injunction provided that it would "remain in effect until January 31st, 2015 or until a party, meaning either one gets married, whichever comes first," and that "if [Father] got married prior to any of these violations, then it didn't apply to [Mother]."

The trial court proceeded to hear evidence on Mother's request for sanctions. During the sanctions hearing, Mother testified she believed the injunction was still in effect after Father married in February 2013, and her romantic partner, who she has since married, did not stay overnight with her between February 2013 and January 31, 2015, while she had possession of W.B.B. Although Mother listed her romantic partner's address as her home address on her 2012, 2013, and 2014 federal income tax returns, Mother denied living with her romantic partner prior to W.B.B.'s eighth birthday.

Father testified that, after he married in 2013, the injunction did not apply to him. He filed the motion for modification, and the parties participated in mediation and agreed to "leave the morality clause in there" so that Mother and her romantic partner would not be allowed to live in the same home with W.B.B. until he turned eight years old. The mediated settlement agreement was incorporated into an agreed order, and the parties operated under the understanding that the injunction was in effect.

According to Father, at some point, he and his wife picked up W.B.B. from Mother's house and noticed W.B.B. was "real quiet." W.B.B. then began crying and became upset. Because of what W.B.B. told him, Father consulted with an attorney, and then requested that Dr.

Mark J. Blotcky perform a forensic psychiatric evaluation of W.B.B. to determine if he was telling the truth.

Blotcky testified he was retained to "look into issues associated with the ongoing litigation." Blotcky knew there was a "morality clause violation issue" and an issue associated with a fifty-foot rule. W.B.B. met with Blotcky three times, with Father participating in the first few minutes of each interview. Blotcky discussed both the fifty-foot rule and the morality clause issues with W.B.B. W.B.B. was "hesitant to talk" about the morality clause issue and appeared anxious and upset. Blotcky believed W.B.B. was credible during their discussion. Blotcky reported his conclusions and recommendations to Father.

According to Father, Blotcky told him W.B.B. "was spending the night with [Mother] and she was telling him to lie to [Father] about where he was staying at night." Father had discussions about "that" with W.B.B. After speaking with Blotcky and "observing [W.B.B.] and his emotional state," Father decided it was in W.B.B.'s best interest to file a motion requesting Mother be held accountable for violating a court order.

Father testified he hated Mother because she and her spouse continually interfered with his employment and because she was not acting in a manner consistent with W.B.B.'s best interest. However, he did not file the second motion for contempt solely because he hates Mother. Rather, he became angry when he "found out what was going on." He believed he had a good faith basis to file the second motion for contempt because he had information from other people, including Blotcky and W.B.B., that supported the relief sought. According to Father, he had asked W.B.B. about every violation alleged in the second motion for contempt.

At Mother's request, the trial court took judicial notice of its entire file. According to Mother, Father had requested in previous motions that she be held in contempt and placed in jail and had testified in a hearing on a previous motion that she should be placed in jail. Father, on

two occasions, had her served with process at W.B.B.'s school when W.B.B. was present and, on one occasion, had her served with process at his house when she was there to pick up W.B.B. Father also had Mother's romantic partner served with process when W.B.B. was present. Mother testified that Father had made statements that caused her to believe he was filing the multiple court proceedings because he hated her. During the hearing on the motion to hold her in contempt for violating the fifty-foot rule, Father testified that, although she was sitting in the stands at a basketball game and he came within fifty feet of her, she should be held in contempt for violating the injunction and placed in jail.

The trial court signed a written order denying Father's second motion for contempt because Father sought to "enforce the Permanent Mutual Injunction Regarding Morality Clause contained in the order that is not clear, specific, and unambiguous as to the duties and responsibilities and cannot be enforced." The trial court found the injunction "remained in effect until 'a party' married. [Father] is 'a party' and was married in February 2013 at which time the Court interprets the injunction as having expired." All of the alleged violations occurred "after the injunction had expired due to the marriage of 'a party.'" The trial court also found, based on the evidence and "the file and pleadings of the parties" that good cause existed to grant Mother's motion for sanctions. The trial court found Father's second motion for contempt was groundless and filed for the purpose of harassment and sanctions should be imposed. The trial court "additionally" found that Father's pleading was groundless and filed for purposes of harassment because Father "hates" Mother. Pursuant to rule of civil procedure 13, the trial court granted a judgment in favor of Mother for attorneys' fees, as sanctions, in the amount of $5,000.

## Enforceability of Injunction by Contempt

In his first issue, Father contends the trial court erred by determining the injunction had expired and was not enforceable by contempt. An agreed divorce decree is a contract subject to

the usual rules of contract construction. *McGoodwin v. McGoodwin*, 671 S.W.2d 880, 882 (Tex. 1984); *In re R.F.G.*, 282 S.W.3d 722, 725 (Tex. App.—Dallas 2009, no pet.). We construe the decree as a whole to harmonize and give effect to the entire document. *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *Parrish v. Dunahoo*, No. 07-15-00029-CV, 2016 WL 6092386, at *3 (Tex. App.—Amarillo Oct. 14, 2016, no pet.) (mem. op.). Our primary concern is to determine the intent of the parties as expressed in the terms of the agreement. *Coker*, 650 S.W.2d at 393; *In re R.F.G.*, 282 S.W.3d at 725. To achieve this objective , we must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the agreement so that none will be rendered meaningless. *Coker*, 650 S.W.2d at 393; *see also Nassar v. Liberty Mut. Fire Ins. Co.*, No. 15-0978, 2017 WL 382424, at *3 (Tex. Jan. 27, 2017) (per curiam). Ordinarily, the writing alone will be deemed to express the parties' intentions because it is the objective, not subjective, intent that controls. *Matagorda Cty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam); *In re C.W.W.*, No. 05-15-00960-CV, 2016 WL 3548036, at *2 (Tex. App.—Dallas June 28, 2016, no pet.) (mem. op.) ("The parties' intent is governed by what is written in the contract, not by what one side contends they intended but failed to say.").

Unless the agreement dictates otherwise, we give words and phrases their ordinary and generally accepted meaning, "reading them in context and in light of the rules of grammar and common usage." *Nassar*, 2017 WL 382424, at *3 (quoting *RSUI Indem. Co. v. The Lynd Co.*, 466 S.W.3d 113, 118 (Tex. 2015)); *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996). "[N]o one phrase, sentence, or section [of a contract] should be isolated from its setting and considered apart from the other provisions." *Nassar*, 2017 WL 382424, at *3 (quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994)).

If, when read as a whole, the decree is so worded that it can be given a certain or definite legal meaning or interpretation, then it is not ambiguous, and we must give effect to the order in light of the actual language used.  *Coker*, 650 S.W.2d at 393; *Parrish*, 2016 WL 6092386, at *3; *see also In re P.G.G.*, No. 05-14-01217-CV, 2016 WL 2621064, at *3 (Tex. App.—Dallas May 6, 2016, no pet.) (mem. op.) ("When the language of the decree is unambiguous, we interpret it literally." (citing *Reiss v. Reiss*, 118 S.W.3d 439, 441–42 Tex. 2003)).  However, if the terms are ambiguous, we must review the record along with the decree to aid in interpreting the judgment.  *Coker*, 650 S.W.2d at 393–94; *Parrish*, 2016 WL 6092386, at *3.  A disagreement about the proper interpretation of the decree does not make it ambiguous.  *See Toler v. Sanders*, 371 S.W.3d 477, 481 (Tex. App.—Houston [1st Dist.] 2012, no pet.).  Rather, the decree is ambiguous only if, after application of the rules of construction, the agreement is reasonably susceptible to more than one meaning or if its meaning is uncertain or doubtful.  *Coker*, 650 S.W.2d at 393; *Toler*, 371 S.W.3d at 481.  Whether a divorce decree is ambiguous is a question of law that we review de novo.  *Shanks v. Treadway*, 110 S.W.3d 444, 447 (Tex. 2003); *In re P.G.G.*, 2016 WL 2621064, at *3.

In this case, Mother and Father were enjoined from "allowing anyone with whom *the* party is romantically involved, to remain over night [sic] with *that* party while *that* party is in possession of the child.  Overnight is defined from 10:00 p.m. until 7:00 a.m.  This injunction shall remain in effect until January 31, 2015[,] or until *a* party marries, which ever event comes first" (emphasis added).  As relevant to the interpretation of the injunction, the word "a" is an indefinite article "used as a function word before singular nouns when the referent is unspecified."  *A*, MERRIAM-WEBSTER.com, https://www.merriam-webster.com/dictionary/a (last visited Feb. 2, 2017).  Conversely, the word "that" refers to "the person, thing, or idea indicated, mentioned, or understood from the situation."  *That*, MERRIAM-WEBSTER.com,

https://www/merriam-webster.com/dictionary/that (last visited Feb. 2. 2017). Similarly, the word "the" is "used as a function word to indicate the following noun or noun equivalent is definite or has been previously specified by context or by circumstance." *The*, MERRIAM-WEBSTER.com, https://www.merriam-webster.com/dictionary/the (last visited Feb. 2, 2017).

In construing the decree, our task is not to find new meaning in relatively common words or to make difficult what is actually quite simple. *Nassar*, 2017 WL 382424, at \*5. Rather, if the injunction is unambiguous, we must apply its language as written. *See id.*; *Coker*, 650 S.W.2d at 383. The parties used the words "the" and "that" to refer to a particular party in the first sentence of the injunction, but used the term "a party," referring to an unspecified party, in the final sentence. This language is not ambiguous and must be interpreted literally. *See Coker*, 650 S.W.2d at 393; *In re P.G.G.*, 2016 WL 2621064, at \*3. As written, the entire injunction, not simply the injunction applicable to one party, terminated if either party married before January 31, 2015. Father married in February 2013, causing the injunction to terminate. Finally, although the October 24, 2013 agreed modification order provided the injunction in the divorce decree would "remain in full force and effect," the injunction had already expired.

We conclude the injunction in the divorce decree expired prior to the date of any of the violations alleged by Father in the second motion for contempt and the October 24, 2013 agreed modification order did not subject Mother to a new injunction. Accordingly, the trial court did not err by denying Father's second motion for contempt. We resolve Father's first issue against him.

**Sanctions**

In his second issue, Father complains the trial court erred by granting Mother monetary sanctions under rule of civil procedure 13.[6] We review the imposition of sanctions under rule 13 for an abuse of discretion. *Nath v. Tex. Children's Hosp.*, 446 S.W.3d 355, 361 (Tex. 2014). A trial court abuses its discretion if it "acted without reference to guiding rules and principles to such an extent that its ruling was arbitrary or unreasonable." *Id.*; *see also O'Donnell v. Vargo*, No. 05-14-00404-CV, 2015 WL 4722459, at *2 (Tex. App.—Dallas Aug. 10, 2015, no pet.) (mem. op.) ("A trial court abuses its discretion in imposing sanctions only if it bases its order on an erroneous view of the law or a clearly erroneous assessment of the evidence."). A trial court does not abuse its discretion in imposing sanctions if some evidence supports its decision. *Nath*, 446 S.W.3d at 361. When, as in this case, a sanctions order names a specific rule or tracks a rule's language, we are confined to determining on appeal whether sanctions are proper under that rule alone. *O'Donnell*, 2015 WL 4722459, at *2.

Pursuant to rule of civil procedure 13, a person who signs a pleading, motion, or other paper certifies that he has read the document and "to the best of [his] knowledge, information, and belief formed after a reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13. If the pleading, motion, or other paper is signed in violation of rule 13, the trial court may sanction the

---

[6] Mother moved for sanctions under chapter 10 of the civil practice and remedies code, not rule of civil procedure 13. A trial court can sanction a party for filing a pleading for an improper purpose under either chapter 10 of the civil practice and remedies code or rule 13. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 10.001, 10.004(a) (West 2002) (trial court may sanction person who signed pleading or motion presented for improper purpose); TEX. R. CIV. P. 13 (trial court may sanction person who files pleading that is groundless and filed in bad faith or groundless and brought for purpose of harassment). On appeal, Father has not argued the trial court erred by imposing sanctions on a ground that was not pleaded by Mother and concedes the analysis under chapter 10 and rule 13 would be "substantially similar." We conclude Father had adequate notice of the conduct that formed the basis of the sanctions, and he waived any complaint to the trial court's entry of sanctions based on rule 13. *See Pine v. Deblieux*, 405 S.W.3d 140, 150 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (upholding sanctions imposed by trial court even though opposing party did not identify specific authority under which she sought sanctions because sanctioned party had adequate notice of conduct that formed basis of sanctions and did not object to inadequate notice of basis of sanctions); *see also Sadeghian v. Webb*, No. 02-03-00367-CV, 2005 WL 737424, at *6 (Tex. App.—Fort Worth Mar. 31, 2005, pet. denied) (mem. op.) (assuming other requirements of rule are met, trial court may impose sanctions under rule 13, including attorneys' fees, on its own motion).

person who signed the document, a represented party, or both. *Id.* The trial court must presume the pleading, motion, or other paper was filed in good faith, *id.*, and the party seeking sanctions bears the burden of overcoming this presumption. *Nath*, 446 S.W.3d at 361.

Rule 13 defines "groundless" as having no basis in law or fact and not warranted by a good faith argument for the extension, modification, or reversal of existing law. TEX. R. CIV. P. 13. To determine if a pleading or motion is groundless, the trial court must examine the circumstances existing when the document was filed, and objectively consider whether the party and counsel made a reasonable inquiry into the legal and factual basis of the claim at that time. *Cherry Petersen Landry Albert LLP v. Cruz*, 443 S.W.3d 441, 453 (Tex. App.—Dallas 2014, pet. denied); *Strasburger v. Kyle*, No. 13-14-00079-CV, 2016 WL 1072618, at *2 (Tex. App.—Corpus Christi Mar. 17, 2016, no pet.) (mem. op.). The trial court may not impose rule 13 sanctions based on the legal merit of a motion, *Cruz*, 443 S.W.3d at 453; *Strasburger*, 2016 WL 1072618, at *2, and merely filing a motion that the trial court denies does not entitle the opposing party to rule 13 sanctions. *D Design Holdings, LP v. MMP Corp.*, 339 S.W.3d 195, 204 (Tex. App.—Dallas 2011, no pet.); *Strasburger*, 2016 WL 1072618, at *2.

As the movant, Mother bore the burden to show Father did not have a reasonable basis for filing the second motion for contempt. TEX. R. CIV. P. 13; *Nath*, 446 S.W.3d at 361. To satisfy this burden, she was required to prove the motion was groundless when filed and that Father had an improper motive for filing it. *Cruz*, 443 S.W.3d at 453. The trial court's sanctions order stated that Father's motion was groundless, but does not include any facts to justify that conclusion. *See* TEX. R. CIV. P. 13 (trial court must state in sanctions order the "particulars" of its finding of good cause to impose sanctions). Reviewing the order in its entirety, the only possible basis for the trial court's conclusion that Father's motion was groundless is the trial court's ruling the injunction expired prior to any of the violations alleged by Father.

The record reflects both Mother and Father subjectively believed the injunction remained in effect as to Mother until January 31, 2015, or until she married, whichever event occurred first. Mother did not contend in her answer to Father's second motion for contempt or in her motion for sanctions that the injunction had expired. Rather, she asserted generally that the "orders sought to be enforced" were "ambiguous and not clear and specific," and the October 24, 2013 order failed to meet the requirements of rule of civil procedure 683 because the injunction referenced other documents.

At some point during the litigation, Mother advanced an interpretation of the language of the injunction that, if correct, meant the injunction expired as to her when Father married in February 2013. Father filed a trial brief arguing Mother's interpretation was not reasonable. Father specifically argued the injunction remained enforceable as to Mother after his marriage because the objective intent of the injunction was to promote marriage and deter "immoral" behavior, and his marriage did not serve as a "blanket approval" for Mother to engage in immoral behavior. Father supported his argument with case law pertaining to contract interpretation. Father also testified at the hearing about the inquiry he made into the factual bases of whether Mother allowed her romantic partner to stay overnight between February 2103 and January 2105, while she had possession of W.B.B. On this record, we cannot conclude Father's request that the trial court interpret the meaning of the provision in a divorce decree lacked merit simply because the trial court did not agree with Father's interpretation. *See Herring v. Welborn*, 27 S.W.3d 132, 144 (Tex. App.—San Antonio 2000, pet. denied) (reversing sanctions order because sanctioned party's interpretation of facts was not without basis in trial court, his authorities offered at least some support for debatable argument, and attempt at reaching favorable result had some arguable legal basis).

Because Mother failed to meet her burden of establishing Father's claim was groundless, the trial court erred by sanctioning Father under rule 13.[7] Accordingly, we resolve Father's second issue in his favor.

## Conclusion

We affirm the trial court's judgment denying Father's Amended Third Motion for Contempt for Violation of the Nunc Pro Tunc Final Decree of Divorce and Final Order in Suit to Modify the Parent-Child Relationship. We reverse the trial court's order imposing sanctions on Father of $5,000 under rule of civil procedure 13 and render judgment that Mother take nothing on her request for sanctions.

/Robert M. Fillmore/
ROBERT M. FILLMORE
JUSTICE

160454F.P05

---

[7] Because Mother failed to establish Father's motion was groundless when filed, we need not consider whether Father filed the motion for purposes of harassment. *See* TEX. R. APP. P. 47.1



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

IN THE INTEREST OF W.B.B., A MINOR CHILD,

No. 05-16-00454-CV

On Appeal from the 255th Judicial District Court, Dallas County, Texas,
Trial Court Cause No. DF-14-23119.
Opinion delivered by Justice Fillmore, Justices Francis and Stoddart participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment assessing attorneys' fees of $5,000.00, as sanctions under Rule of Civil Procedure 13, against appellant William Barrett Byrd, and **RENDER** judgment that appellee Stephanie Dawn Byrd take nothing on her motion for sanction. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that each party bear its own costs of this appeal.

Judgment entered this 8th day of February, 2017.