**VACATED and RENDERED; and Opinion Filed August 26, 2014.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-12-01559-CV

**CHERRY PETERSEN LANDRY ALBERT LLP, Appellant**
**V.**
**ERWIN CRUZ, M.D., Appellee**

**On Appeal from the 101st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. 10-16274**

## OPINION

Before Justices Francis, Lang-Miers, and Lewis
Opinion by Justice Lang-Miers

The law firm Cherry Petersen Landry Albert LLP (CPLA) appeals the trial judge's order imposing sanctions against it in the underlying litigation between its clients Mehrdad Ghani, Ghani Medical Investments, Inc. (GMI), MCG Group, Inc., North Dallas Medical Imaging, L.P. (NDMI), and Plano AMI, LP (collectively, the Ghani defendants) and appellee Dr. Erwin Cruz. The sanctions order stated that CPLA engaged in discovery abuse and filed counterclaims against Cruz that were groundless and filed in bad faith for an improper purpose. For the following reasons, we conclude that the trial judge abused his discretion by imposing sanctions against CPLA, and we vacate the trial judge's November 1, 2012 sanctions order.

BACKGROUND

**The nature of the dispute.** The litigation underlying this appeal arose from a business dispute between Cruz, Ghani, and others concerning the operation and management of two medical imaging facilities, NDMI and Plano AMI. A limited partner of NDMI sued Cruz and Ghani for mismanaging the facility; Cruz and Ghani filed cross-claims against each other. After some of the claims settled, the cross-claims were severed, Cruz was positioned as plaintiff, other parties were joined, and Ghani's cross-claims against Cruz became counterclaims.

The Ghani defendants filed a second amended counterclaim against Cruz alleging (1) that Cruz breached and conspired to breach fiduciary duties owed to Ghani, MCG, NDMI, Plano AMI, and GMI causing them damages and benefitting himself in the form of fees to his practice; (2) business disparagement; and (3) defamation. Cruz filed no-evidence and traditional motions for partial summary judgment seeking dismissal of many of the counterclaims; the trial judge granted the motions in part. The Ghani defendants nonsuited several of the counterclaims before trial.

**Discovery.** During the course of litigation, Ghani testified in several depositions either in his individual capacity or as a corporate representative of NDMI and Plano AMI. When he reviewed the transcripts of those depositions, he made changes to several answers and submitted deposition errata sheets containing those changes. He made six changes to a 181-page deposition, and nineteen changes to a 260-page deposition. In total, he made over forty changes to all his depositions. The sanctions order is based in part on CPLA's involvement in preparing Ghani's deposition errata sheets.

**Pretrial proceedings regarding deposition errata**. At a pretrial hearing on the Friday before trial was set to begin on Monday, Cruz raised the issue of CPLA's allegedly improper involvement in preparing Ghani's deposition errata sheets. Cruz's counsel told the trial judge

that he had reviewed CPLA's attorney fee billings produced during discovery and saw where CPLA "was counseling with a witness to change sworn testimony under oath." He said CPLA's billings showed that the firm was "sending [Ghani] the errata changes," and Cruz wanted to call CPLA's lawyers, Craig Albert and Sarah Shadonix, as witnesses during trial to question them about their involvement in preparing the deposition errata sheets. Cruz admitted that it was unusual to call opposing counsel as witnesses, but in this case he believed the lawyers' testimony was "material on errata changes."

The judge said his "rule on errata is very simple. The errata comes in. And if there is inconsistency, the original testimony comes in. And if it has been as extensive and substantive as you are representing to me, you should be having a field day." Cruz's counsel asked for permission to show the judge the errata sheets and CPLA's billings, and the judge said he could.

On Monday before voir dire Cruz provided the judge with a notebook comparing Ghani's original deposition answers with his changes from the errata sheets. Cruz also provided the judge copies of CPLA's billings referring to deposition errata. The judge held an unrecorded conference in chambers. Back on the record, the judge stated he had reviewed the billings produced by CPLA to Cruz on April 18, 2012. He ordered CPLA to provide "any e-mail exchanged between counsel and the defendants pertaining to deposition testimony changes or errata . . . for in camera review" by the next morning, and CPLA did.

**Trial proceedings.** After voir dire was completed and the jury had been sent home, the judge stated he "was not comforted by the e-mails" provided by CPLA but was "not to the point yet of saying that the attorney-client privilege as to those communications has been waived or forfeited under the crime fraud exception, but I'm troubled." He said he had "more work to do" to determine "to what extent the actual errata square up with what's in those e-mails." He said that although he normally took "the position that any inconsistency between the original

–3–

testimony and the errata tends to punish itself," he would "certainly entertain" Cruz's argument "for the exclusion of the errata[.]" Cruz did not move to exclude the errata.

A week into the trial, Cruz asked the judge about the e-mails CPLA had provided to the judge for in camera review. The judge said the e-mails "may reflect some level of discovery abuse, which I believe will be addressed by my eventual ruling on whether the . . . errata will be permitted to come into evidence . . . ." Cruz's counsel told the judge that "there are other sanctions other than not using the errata," but the judge started talking before counsel concluded his argument.

The next day the subject of the deposition errata arose again when Cruz told the judge that he wanted to offer Ghani's deposition errata sheets as exhibits and use them in his cross-examination of Ghani. Ghani objected to the admission of the errata sheets as exhibits. The judge said "how many changes were made and whether they were the witness's words or were they the lawyer's words . . . goes to the credibility of the witnesses" to some degree and that he was "seriously considering just excluding all of the errata." Cruz did not move to exclude the errata, but asked to be allowed to tell the jury the total number of changes to Ghani's deposition answers plus "go into" about "five or six or seven of them" on cross-examination of Ghani. He said it was more effective and "shortens the testimony" than using the errata as impeachment. The judge said he would allow it as long as he did not get into collateral matters.

On cross-examination of Ghani, a dispute arose over the proper use of the deposition errata sheets, and the judge recessed the jury and held a hearing. In arguing for a departure from the usual procedure for offering impeachment evidence, Cruz said "this is a case where lawyers' involvement in changing witnesses' testimony has been profuse . . . 48 errata changes and the lawyer's billing showing they got with him and sent him e-mails which appear to be telling him

what to say – I mean, in this instance I would ask the Court for the indulgence based upon the conduct of counsel and the witness previously."

When the trial continued, the following exchange between Cruz's lawyer and Ghani occurred:

> Q.     Is it true that with the assistance of your attorneys directing changes to your depositions, you had 48 corrections to your sworn testimony in this case?
>
> A.     I'm not sure about how many, but I know we had some changes, yes.
>
> Q.     Okay.  And was the wording in those changes your wording or that of your attorneys?
>
> A.     Mine.

At the end of the day's testimony, the judge told counsel that he was having "a real problem" with Ghani's testimony that the changes to his deposition answers were his own.  The judge said he would review it more but that it may "be sufficient justification for me to hand over a couple of those e-mails to plaintiff's counsel for use in further cross-examination of this witness."

The next day before trial proceedings began, the judge stated that he compared Ghani's deposition errata sheets to an e-mail from CPLA and "found the congruence between the language in the e-mail and the changes to the deposition to be virtually total."  He said he was "forced to conclude that Mr. Ghani has attempted to perpetrate a fraud on this Court and this jury and that the attorney-client privilege cannot be used to shield that conduct."  Over CPLA's objection, the trial judge gave Cruz the e-mail between CPLA and Ghani "for such use, if any, as [Cruz] see[s] fit to make of it."

Cruz asked to admit the deposition errata sheets, CPLA's billings, and the e-mail between CPLA and Ghani as exhibits.  The judge admitted the errata sheets and the e-mail.  He said he was "deeply offended by some of what's gone on here, [but] it's not what this case is about.  I'm

giving you the e-mail. I'm going to let you impeach the answer that he gave yesterday and let the jury see these two errata sheets. I think that's probably enough to make the point."

In front of the jury, Cruz read Ghani's trial testimony about the wording in the deposition errata being "mine" and asked him to "look at the jury and tell them if that's a true answer." Ghani said the exact words were not his words, but "that's what I express to my attorney. And once they put it in, I looked at it and I accepted it, and I –." Cruz showed the jury Ghani's deposition errata sheets alongside the e-mail from CPLA containing suggested revisions to Ghani's deposition answers. Several of Ghani's changed answers on the deposition errata sheets contained language identical to the suggested revisions in the e-mail. This questioning and comparison continued for eleven pages of the trial transcript.

In closing argument, Cruz's counsel argued:

> Errors of the heart, you are going to have from time to time when you get excited. . . . Misrepresentations to a jury cannot be done with a pure heart. When someone knowingly tells you something that's not true, . . . that's not done with a pure heart. Changing a sworn deposition 47 [sic] times is not done with a pure heart. Having Mr. Ghani stand there and look you in the eye and say, oh, yeah, yeah, I changed that deposition, and I changed my sworn testimony. Yeah, I did it a lot of times, but it is my words. I saw the need to change it. I did it personally. And then finding out that Mr. Albert's firm had directed him to make those changes – and you can see the e-mails, and you can see the language word for word for word – that's not done with a pure heart. . . . Lawyers can make mistakes, but you don't make mistakes involving integrity. . . . "Subject to the penalties of perjury" means absolutely zero to the man, as best I can tell. . . . I can't imagine sleeping, much less getting up in the morning and looking at myself in the mirror, if I had changed sworn testimony of mine once or twice – much less 47 [sic] times at the direction of the lawyer. That's the kind of integrity we are talking about.

**The verdict.** The jury returned a verdict in favor of Cruz and against Ghani for about $3 million. Then the judge began the second phase of trial on punitive damages. Cruz called Ghani as a witness and questioned him about his net worth and other matters. He again questioned Ghani's integrity, his "respect of the rule of law," and emphasized Ghani's testimony that the changes to his deposition were his words but the e-mail from his lawyers told him "exactly how

to change it." In closing argument in this phase of trial, Cruz told the jury it "can consider the nature of the wrong. Now, this wrong goes every place from . . . changing your sworn testimony 46 [sic] times, to looking you all in the eye and saying, Oh, those are my words. The next exhibit shows they were directly from the mouths of his attorneys."

The jury awarded punitive damages against Ghani in the approximate amount of $7 million on all of Cruz's claims. After applying damages caps, the trial court rendered judgment against Ghani and in favor of Cruz for over $4 million plus prejudgment and postjudgment interest.

**Posttrial motion for sanctions.** After the trial concluded, Cruz moved for sanctions against CPLA for discovery abuse and filing groundless counterclaims. In the motion, Cruz argued that Ghani and CPLA should be sanctioned under rule 215 of the Texas Rules of Civil Procedure or the judge's inherent authority for discovery abuse in connection with Ghani's deposition errata sheets. Cruz argued that the language used in the deposition errata sheets "originated with [Ghani]'s counsel and was copied verbatim into the errata sheets," and that Ghani and CPLA "were attempting to improperly substitute the words of counsel in lieu of the sworn, verbal testimony Ghani had already provided." He argued that the "changes were meant to provide self-serving testimony which Ghani did not supply in his original sworn testimony." Additionally, Cruz argued that the deposition changes did not comply with civil procedure rule 203 because they were submitted untimely and did not contain reasons for the changes.

Cruz also moved for sanctions on the ground that CPLA knew or should have known there was no legal or factual bases for the counterclaims it filed against him on behalf of the Ghani defendants. He argued that the counterclaims "were almost entirely baseless," were a "'kitchen-sink' style of pleading," and the "Defendants paid little attention, if any, to whether they could construct entire causes of actions [sic] which would include support for each of the

–7–

various elements: duty – breach – causation – damages." The motion gave one example from the many counterclaims filed and argued that the Ghani defendants "never attempted to explain what duty this allegedly breached, how it caused damages, or what those damages supposedly were." Cruz stated that he sent traditional discovery requests, conferred with counsel for the Ghani defendants, and filed motions to compel disclosures and special exceptions, but the Ghani defendants never "put any meat on the counterclaims' bones."

**CPLA's response to the motion for sanctions.** CPLA responded arguing that Cruz's motion for sanctions for pretrial discovery abuse was untimely because it was not filed pretrial. It also argued that the conduct was not sanctionable, Cruz did not seek to strike the changes, and Ghani's trial testimony as a whole showed he consulted with his lawyers before making the changes and, consequently, did not mislead the jury about the origin of the changes. CPLA also argued that allowing Cruz to cross-examine Ghani about the deposition changes using CPLA's privileged e-mail to its client was "the kind of non-excessive remedy that relates directly to the conduct sought to be sanctioned . . . ."

With regard to the counterclaims, CPLA responded that it had a good faith basis for filing the counterclaims against Cruz and made a reasonable inquiry into the factual bases for the counterclaims. CPLA attached Albert's affidavit to support these contentions and argued that Cruz did not overcome the presumption that the counterclaims were filed in good faith.

**The hearing on the motion for sanctions**. At the hearing on the motion for sanctions, Cruz argued that he had not waived his right to move for sanctions regarding discovery abuse and reminded the judge about Ghani's in-trial testimony, compared to his deposition testimony, compared to the deposition errata sheets. He presented several exhibits to support the comparisons. He argued for sanctions against Ghani and his lawyers.

Cruz also argued he was entitled to sanctions based on the allegedly groundless counterclaims. He grouped the counterclaims into three general categories: (1) barred by limitations, (2) no cognizable duty, and (3) no connection to any damages the Ghani defendants may have suffered. He generally argued that CPLA did not make a reasonable inquiry into the legal and factual bases for the counterclaims. And although he presented several exhibits, he did not refer to those exhibits during the hearing or argue their relevance. He referred to a chart that he prepared showing the "legal and factual hurdles that [CPLA] should have overcome before filing suit[.]"

CPLA presented the affidavit of its lawyer, Albert. Albert also testified in person at the hearing. Either by affidavit or live testimony, Albert testified that before he filed the counterclaims he interviewed Ghani and Ghani's wife; requested, obtained, and reviewed the Ghani defendants' governance documents "to determine preliminarily that the factual allegations were consistent with key provisions in those governing documents"; and "took the following actions to determine that there was a valid basis in law and in fact" for the claims. The actions he stated he took before filing the counterclaims included interviews with various people, document subpoenas, research, depositions, and review of corporate and partnership minutes. Albert also testified about specific claims and why he thought they were not groundless or brought in bad faith. He testified that CPLA "endeavored to weed out claims not because of lack of evidence or no legal duty, but because in our evaluation they would cloud the presentation and just lengthen the trial" and, consequently, nonsuited several claims for that reason. Cruz did not ask any questions of Albert.

**The sanctions order.** The trial judge concluded that sanctions against CPLA were warranted. He imposed sanctions under rule 215 and his inherent authority against CPLA for discovery abuse in connection with the deposition errata sheets in the amount of $45,000 plus

$17,500 for appellate attorney fees. The judge did not sanction Ghani or hold him in contempt for the deposition errata sheets.

Although the judge did not make separate findings of fact and conclusions of law, in his order he stated that CPLA "wrongfully resisted proper discovery and/or abused the discovery process and/or offended the dignity of the Court through the use of Ghani's errata changes, compared to his trial testimony, and compared to the September 9, 2011 email admitted into evidence at trial"; the deposition errata sheets did not comply with rule 203 because the changes were not made timely and Ghani did not give reasons for the changes; CPLA "was instrumental in formulating the language to be used in the 'revised,' unexplained, sworn answers that Ghani submitted in his untimely errata sheets"; and Ghani's testimony "was part of a collective effort to mislead the jury concerning the true character of those errata changes."

The trial judge also imposed sanctions against CPLA with regard to the counterclaims it filed against Cruz on behalf of the Ghani defendants. He stated in the sanctions order that CPLA filed "its Second Amended Counterclaim" in November 2011 over "a year after its original counterclaim was filed" and "repeated . . . a range of claims that were either legally or factually unsupportable." The order states:

> By November 2011, [CPLA] had been made repeatedly aware of problems regarding the legal and factual basis for these claims through Plaintiff's special exceptions, discovery requests, and related pre-trial proceedings. Nevertheless, [CPLA] repeated these allegations without forming a belief in the validity of the allegations following any reasonable inquiry into their legal and factual merit.

The order gave as examples

> counterclaims that were barred, on their face, by the applicable statutes of limitations without conducting a reasonable inquiry into whether the facts of the case could justify tolling those limitations periods . . . [allegations that] Cruz should pay damages for breaching his fiduciary duties for conduct that [CPLA] did not have a reasonable basis for alleging . . . .

> With respect to their claims for damages [CPLA] asserted counterclaims on behalf of the various counterclaimants even though, at most, only one

–10–

counterclaimant could have plausibly suffered the damages asserted. So, for instance, [CPLA] asserted a claim that Ghani was improperly denied a salary from NDMI. Even assuming that this would have given rise to some claim by Ghani, there is no reasonable basis to allege that this conduct would have given rise to a claim by either NDMI or MCG. Yet, [CPLA] still asserted counterclaims on behalf of NDMI and MCG seeking to recover Ghani's "unpaid" salary.

The lack of legal and factual support for these counterclaims is further reflected in this Court's Orders granting summary judgment against those claims which are incorporated herein by reference.

The judge found that CPLA asserted these counterclaims for purposes of delay and to increase the cost of litigation and imposed sanctions in the amount of $40,000 plus $17,500 in appellate attorney fees against CPLA. He stated that he thought "these counterclaims should have been taken off the table much sooner." He also stated that the reason he denied Cruz's special exceptions was because he "expected the counterclaimant or counterclaimants to supply the deficiency in their pleadings through discovery responses. And that never really happened either."

CPLA appeals the sanctions order.

## STANDARD OF REVIEW

We review a trial judge's imposition of sanctions for an abuse of discretion. *Unifund CCR Partners v. Villa*, 299 S.W.3d 92, 97 (Tex. 2009) (citing *Low v. Henry*, 221 S.W.3d 609, 614 (Tex. 2007)). We will reverse the imposition of sanctions if the trial judge acted without reference to guiding rules and principles, making his ruling arbitrary or unreasonable. *Id.* We review the entire record to determine whether the imposition of sanctions was an abuse of discretion. *Shops at Legacy (Inland) Ltd. P'ship v. Fine Autographs & Memorabilia Retail Stores, Inc.*, 418 S.W.3d 229, 232 (Tex. App.—Dallas 2013, no pet.) (citing *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006) (per curiam) and *Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 384 (Tex. App.—Dallas 2009, pet. denied)).

–11–

In issues one, two, and three, CPLA argues that the trial judge erred by sanctioning it in connection with Ghani's deposition errata sheets and testimony on cross-examination. CPLA initially contends that Cruz waived his complaint about pretrial discovery conduct by not moving for sanctions under rule 215 and getting a ruling before trial. It also argues that the sanctions order may not be upheld under the judge's inherent authority. Cruz argues that he was not aware of CPLA's "dominant role instigating the errata abuse" until the judge produced CPLA's e-mail to him during trial and, consequently, did not waive his right to seek sanctions posttrial. He contends that "[a]t most, [he] knew from cryptic time entries that [CPLA] had consulted somehow with Ghani about the errata." We agree with CPLA.

## Sanctions under Rule 215

A party who is aware of possible discovery abuse is required to move for sanctions and obtain a ruling prior to trial. *Remington Arms Co., Inc. v. Caldwell*, 850 S.W.2d 167, 170 (Tex. 1993). "[T]he failure to obtain a pretrial ruling on discovery disputes that exist before commencement of trial constitutes a waiver of any claim for sanctions based on that conduct." *Id*. The supreme court has stated that *Remington Arms* "bars a trial court from awarding posttrial sanctions based on pretrial conduct of which a party 'was aware' before trial; lack of 'conclusive evidence' is not an excuse." *Meyer v. Cathey*, 167 S.W.3d 327, 333 (Tex. 2005).

The record shows that Cruz "was aware" of CPLA's involvement in the deposition errata before trial because he argued in a pretrial hearing that CPLA "was counseling with a witness to change sworn testimony under oath." But instead of moving to exclude the errata or for other sanctions, Cruz asked to be permitted to call CPLA's lawyers as witnesses in trial because their testimony was "material on errata changes." Cruz argues on appeal that he did not have "full

knowledge" of CPLA's "abuse" until he received the e-mail. But the supreme court has said that a party only needs to be "aware." *Meyer*, 167 S.W.3d at 333.

Additionally, Cruz argued for the admission of the deposition errata sheets as exhibits at trial, stating CPLA's "lawyers' involvement in changing witnesses' testimony has been profuse . . . 48 errata changes and the lawyer's billing showing they got with him and sent him e-mails which appear to be telling him what to say[.]" This argument was made before the court gave Cruz the e-mail from CPLA to Ghani and corroborates that Cruz "was aware" of the allegedly sanctionable conduct before trial.

Cruz argues that he "appropriately raised pre-trial complaints about the errata (or what he knew of the errata)," and "[t]he *trial court's* "unilateral decision to defer a determination of sanctions until after trial" does not constitute Cruz's waiver of the complaint. He contends that *Remington Arms* does not apply to circumstances like this, citing several cases to support his argument. But those cases are distinguishable.

In *Gaspard v. Beadle*, 36 S.W.3d 229, 240 (Tex. App.—Houston [1st Dist.] 2001, pet. denied), the trial court's sanctions were based on rule 13, not rule 215. *See* TEX. R. CIV. P. 13 (regarding filing groundless pleadings and motions in bad faith or for purpose of harassment); *accord Finley v. Olive*, 77 S.W.3d 520, 525–26 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (noting that in *Gaspard* a motion for sanctions was filed pretrial under rule 13 alleging that the plaintiff's petition was groundless and in bad faith). In *Brantley v. Etter*, 677 S.W.2d 503, 504 (Tex. 1984) (per curiam), the court did not address whether a motion for sanctions was filed pretrial. And in *Chevron Phillips Chemical Co. LP v. Kingwood Crossroads, L.P.*, 346 S.W.3d 37, 74–75 (Tex. App.—Houston [14th Dist.] 2011, pet. denied), the party complaining about discovery abuse filed a pretrial motion for sanctions, and the conduct also violated a trial court's order regarding discovery.

Additionally, when Cruz raised pretrial the matter of CPLA's involvement with Ghani's deposition errata, he did so only in the context of wanting to call CPLA's lawyers as witnesses at trial. And when the trial judge said he would consider excluding all the errata, Cruz chose not to move to exclude the errata. Instead, Cruz waited until trial and asked to offer the deposition errata as exhibits. We view Cruz's approach as trial strategy. *See Cathey v. Meyer*, 115 S.W.3d 644, 672–73 (Tex. App.—Waco 2003), *rev'd in part on other grounds*, 167 S.W.3d 327 (Tex. 2005) (per curiam). By choosing this strategy, Cruz waived his objection under rule 215. *See id.*

Based on this record, we conclude that Cruz had a reasonable evidentiary basis upon which to file a pretrial motion for sanctions. *See Meyer*, 167 S.W.3d at 333; *see also Cathey*, 115 S.W.3d at 671–72 (party had evidence pretrial that opponent lied on resume based on deposition testimony of other individuals contradicting opponent). Because Cruz waived his right to seek pretrial discovery sanctions under rule 215, the trial judge abused his discretion by imposing sanctions under rule 215.

### Sanctions under the Judge's Inherent Authority

CPLA also argues that the sanctions order cannot be upheld under the trial judge's inherent authority. We agree.

A trial judge has certain inherent power derived "from the very fact that the court has been created and charged by the constitution with certain duties and responsibilities." *Dallas Cnty. Constable Precinct 5 v. KingVision Pay-Per-View, Ltd.*, 219 S.W.3d 602, 610 (Tex. App.—Dallas 2007, no pet.) (quoting *Travelers Indem. Co. of Conn. v. Mayfield*, 923 S.W.2d 590, 594 (Tex. 1996) (orig. proceeding)). A judge may call upon his inherent powers "to aid in the exercise of [the court's] jurisdiction, in the administration of justice, and in the preservation of [the court's] independence and integrity." *Id.* (quoting *Travelers Indem.*, 923 S.W.2d at 594). The trial judge also has inherent power to sanction to the extent necessary to deter, alleviate, and

–14–

counteract bad faith abuse of the judicial process, such as any significant interference with the court's administration of its core functions, including hearing evidence, deciding issues of fact raised by the pleadings, deciding questions of law, rendering final judgment, and enforcing its judgments. *Id.*; *Union Carbide Corp. v. Martin*, 349 S.W.3d 137, 147 (Tex. App.—Dallas 2011, no pet.); *Kennedy v. Kennedy*, 125 S.W.3d 14, 19 (Tex. App.—Austin 2002, pet. denied) ("A court cannot invoke its inherent power to sanction without some evidence and factual findings that the conduct complained of significantly interfered with the court's legitimate exercise of one of its traditional core functions."). However, when a statute or rule addresses particular conduct, generally a trial judge may not exercise his inherent authority to make what the Texas Supreme Court has described as "'a judicial end-run'" around the statutory scheme. *See KingVision*, 219 S.W.3d at 610 (quoting *Travelers Indem.*, 923 S.W.2d at 594).

We previously concluded that Cruz was aware of the alleged pretrial discovery abuse before trial and could have moved for sanctions pretrial under rule 215. By not doing so, Cruz waived his right to seek posttrial sanctions under rule 215. And the imposition of sanctions under the judge's inherent authority for alleged pretrial discovery abuse that was known pretrial constitutes this type of a "judicial end-run" around rule 215. *See id.* Consequently, we conclude that the trial judge abused his discretion by imposing sanctions under his inherent authority against CPLA for pretrial discovery abuse.

To the extent the trial judge sanctioned CPLA under his inherent authority for Ghani's testimony about the deposition errata, as opposed to the alleged pretrial discovery abuse, we conclude that the sanctions were not directly related to CPLA's conduct and were excessive.

Sanctions serve the purposes of assuring compliance with the discovery rules, deterring those who might be tempted to abuse the rules, and punishing those who violate the rules. *Cire v. Cummings*, 134 S.W.3d 835, 839 (Tex. 2004); *Union Carbide*, 349 S.W.3d at 144. Sanctions

–15–

must be just. *Cire*, 134 S.W.3d at 839. We look at two components to measure whether the imposition of sanctions was just: (1) a direct relationship must exist between the offensive conduct and the sanction imposed, and (2) the sanction must not be excessive. *Id*. A direct relationship "means that a just sanction must be directed against the abuse and toward remedying the prejudice caused the innocent party." *Id*. (quoting *TransAm. Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex. 1991)). A trial judge also must not impose any more severe sanction than required to satisfy the legitimate purposes of discovery. *Union Carbide*, 349 S.W.3d at 145. "This means a court must consider relatively less stringent sanctions first to determine whether lesser sanctions will fully promote compliance, deterrence, and discourage further abuse." *Id*.

During Cruz's cross-examination of Ghani about his deposition answers and the errata sheets, Ghani testified that the wording in the deposition errata was "mine." Up until this testimony, the trial judge had said he was going to consider the discovery conduct in his "game time decision" about whether to admit or exclude the errata. After this testimony, however, the trial judge questioned Ghani's veracity and concluded that Ghani had attempted to perpetrate a fraud on the court and mislead the jury about the source of the errata. The judge gave Cruz an attorney-client e-mail from CPLA to Ghani for Cruz's use in cross-examining Ghani and refused to entertain CPLA's objection to the production of privileged attorney-client communications.

Cruz used the e-mail to show the jury how CPLA's suggested revisions were identical in several instances to Ghani's deposition errata sheets and imputed Ghani's alleged lack of integrity to CPLA based on its involvement in changing Ghani's deposition answers. The judge imposed sanctions against CPLA, not Ghani, for its "collective effort to mislead the jury concerning the true character of those errata changes." However, the record shows that during CPLA's examination of Ghani at trial, CPLA did not mention or allude to any of the changes Ghani made to his depositions. It was Cruz who brought up the subject of the deposition errata,

–16–

and it was Ghani who the judge said had tried to mislead the jury with his testimony in response to Cruz's questions. And in considering whether Ghani's testimony rose "to the level of either perjury or criminal contempt," the trial judge stated that "on this record and keeping in mind that the burden of proof is beyond a reasonable doubt, I'm unwilling to say that I am satisfied that I would be acting properly to so confine Mr. Ghani. So the motion for contempt is denied."

We conclude that the sanctions imposed against CPLA were not directly related to the conduct of CPLA but, instead, were directly related to Ghani's allegedly misleading testimony. We further conclude that the purposes of discovery sanctions were accomplished when the judge gave Cruz the attorney-client e-mail and allowed him to show the jury the deposition errata sheets alongside the e-mail. As the judge stated after giving Cruz the e-mail and allowing him to introduce the deposition errata sheets as exhibits, "I think that's probably enough to make the point." Consequently, the additional imposition of monetary sanctions posttrial was excessive.[1] *See Remington Arms*, 850 S.W.2d at 171. We resolve issues one, two, and three in CPLA's favor.

## COUNTERCLAIMS

In issues four and five, CPLA argues that the trial judge abused his discretion by sanctioning CPLA for filing counterclaims on behalf of its clients. The judge stated that it was imposing sanctions against CPLA under chapter 10 of the civil practice and remedies code and rule 13.

## Applicable Law

Under chapter 10 of the civil practice and remedies code, an attorney signing a pleading or motion certifies that "to the signatory's best knowledge, information, and belief, formed after reasonable inquiry . . . the pleading or motion is not being presented for any improper

---

[1] We do not decide whether CPLA's conduct in connection with the deposition errata was subject to sanctions in the first place.

purpose . . . and each allegation or other factual contention in the pleading or motion has evidentiary support or . . . is likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]" TEX. CIV. PRAC. & REM. CODE ANN. § 10.001 (West 2002). Under rule 13, an attorney signing a pleading or motion certifies that "to the best of their knowledge, information, and belief formed after reasonable inquiry the instrument is not groundless and brought in bad faith or groundless and brought for the purpose of harassment." TEX. R. CIV. P. 13. "Groundless" means "no basis in law or fact and not warranted by good faith argument for the extension, modification, or reversal of existing law." *Id*. "Bad faith" means "the conscious doing of a wrong for dishonest, discriminatory, or malicious purposes." *Campos v. Ysleta Gen. Hosp., Inc.*, 879 S.W.2d 67, 71 (Tex. App.—El Paso 1994, writ denied).

We presume that pleadings are filed in good faith. TEX. R. CIV. P. 13; *Villa*, 229 S.W.3d at 98 (citing *Low*, 221 S.W.3d at 617); *Arnold v. Life Partners, Inc.*, 416 S.W.3d 577, 581 (Tex. App.—Dallas 2013, pet. filed). The party seeking sanctions bears the burden to overcome this general presumption. *Villa*, 229 S.W.3d at 98 (citing *Low*, 221 S.W.3d at 617).

Before imposing sanctions under either chapter 10 or rule 13, a trial judge "must examine the circumstances existing when the litigant filed the pleadings[.]" *Monroe v. Grider*, 884 S.W.2d 811, 817 (Tex. App.—Dallas 1994, writ denied); *accord Aquarium Env'ts, Inc. v. Elgohary*, No. 01-12-01169-CV, 2014 WL 1778266, at *8 (Tex. App.—Houston [1st Dist.] May 1, 2014, no pet. h.) (mem. op.). A judge may not impose sanctions based on the legal merit of a pleading or motion. *Dike v. Peltier Chevrolet, Inc.*, 343 S.W.3d 179, 193 (Tex. App.—Texarkana 2011, no pet.); *Monroe*, 884 S.W.2d at 817. Instead, the focus is on the conduct of the party or lawyer at the time the pleading was filed. *Dike*, 343 S.W.3d at 193; *Monroe*, 884 S.W.2d at 817. The question is whether, using an objective standard, the party and its counsel

made a reasonable inquiry into the legal and factual basis of the claim before filing it. *Harrison v. Harrison*, 363 S.W.3d 859, 863 (Tex. App.—Houston [14th Dist.] 2012, no pet.).

**Analysis**

The trial judge sanctioned CPLA for filing a second amended counterclaim because he concluded that CPLA "repeated . . . a range of claims" that were legally and factually insupportable and filed for the purposes of causing unnecessary delay and increased costs of litigation. As the movant, Cruz bore the burden to show CPLA did not have a reasonable basis for filing the second amended counterclaim. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 10.001; TEX. R. CIV. P. 13. To satisfy this burden, Cruz had to prove the counterclaims were groundless when filed and that CPLA had an improper motive for filing them. *Karagounis v. Prop. Co. of Am.*, 970 S.W.2d 761, 765 (Tex. App.—Amarillo 1998, pet. denied); *accord Alejandro v. Robstown Indep. Sch. Dist.*, 131 S.W.3d 663, 670 (Tex. App.—Corpus Christi 2004, no pet.).

At the hearing, Cruz introduced into evidence CPLA's clients' discovery responses and disclosures; letters Cruz sent to CPLA complaining that certain responses and disclosures were inadequate and deficient; motions to compel and special exceptions that Cruz filed seeking intervention from the judge; excerpts from Ghani's deposition testimony in which Cruz claims he asked specific questions about the factual support for the counterclaims; and a "summary" of the counterclaims purporting to show the lack of evidence on each element of each counterclaim.

Cruz argued that the counterclaims fell into three general categories of "flaws": those that were barred by statutes of limitation on their face, those that did not assert the breach of a cognizable duty, and those that did not have any connection to any damages suffered by the counterclaimants. He argued that "for the vast majority of these [counter]claims, [the Ghani defendants] could at best meet one of those elements [of duty, breach, and damages]. He argued that it required over 100 hours of attorney time to investigate the factual bases of the

counterclaims, review the partnership documents and other files, and analyze the various defenses he might have. But he never connected any of the specific exhibits he introduced to any of these arguments, and his arguments were focused on the fact that most of the counterclaims were ultimately dismissed either through nonsuit, motion for summary judgment, or directed verdict. *See Dike*, 343 S.W.3d at 192–93 (focus is not on ultimate merits of claim); *Monroe*, 884 S.W.2d at 817. The only witness Cruz presented at the sanctions hearing was his attorney who testified about the amount of time his lawyers spent working on the counterclaims and deposition errata.

With regard to CPLA's motives in filing the counterclaims, Cruz argued that "[t]he fact that [CPLA] let these things last so long before giving in like they should have given in a long time ago, is evidence of bad faith which would support a Rule 13 sanction in addition to whatever the Court might elect to do under Chapter 10 . . . ." But a plaintiff has a right to take a nonsuit and may do so without regard to the merits of the litigation. *Dike*, 343 S.W.3d at 192. And Cruz did not present any evidence of CPLA's motive or the circumstances that existed at the time CPLA filed the counterclaims to support his "bad faith" argument. *See Fast Invs., LLC v. Prosper Bank*, No. 02-13-00026-CV, 2014 WL 888438, at *2 (Tex. App.—Fort Worth Mar. 6, 2014, no pet.) (mem. op.) (even assuming claims were groundless, movant presented no evidence of motive or credibility in filing groundless claims or of circumstances that existed at the time claims filed), *implied overruling in part on other grounds recognized by In re J.R.*, 123 S.W.3d 669, 671 n.6 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

The only evidence in the record of CPLA's state of mind or the circumstances that existed at the time they filed the second amended counterclaim were Albert's own affidavit and testimony supporting his contention that he made a reasonable inquiry into the legal and factual bases of each counterclaim before he filed them. Albert testified about the reasonable inquiry he

made before filing the counterclaims; the duties he alleged Cruz owed to the Ghani defendants including the duties of loyalty, candor, good care, and scrupulous honesty; and the damages suffered by the Ghani defendants. And he addressed Cruz's arguments about limitations and lack of a cognizable duty or damages and explained why those claims were not filed in bad faith. After he concluded his testimony, he welcomed questions on each of the counterclaims, but Cruz did not ask him any questions.

The trial judge concluded that the counterclaims were groundless and filed with an improper motive. The sanctions order contained many conclusions about CPLA's conduct in filing the counterclaims, but did not include facts to justify those conclusions. *See Mattly v. Spiegel, Inc.*, 19 S.W.3d 890, 895–96 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (order required to be specific to show trial court properly weighed sanctions request and imposed sanctions in appropriate manner when justified by circumstances). Despite the lack of evidence controverting Albert's testimony about his reasonable inquiry before filing the counterclaims, the sanctions order stated that CPLA did not form a belief "in the validity of the allegations following any reasonable inquiry into their legal and factual merit." And although there was no evidence about the statutes of limitation that applied to each counterclaim, the sanctions order stated that CPLA "asserted counterclaims that were barred, on their face, by the applicable statutes of limitations without conducting a reasonable inquiry into whether the facts of the case could justify tolling those limitations periods." The order states that "[t]he lack of legal and factual support for these counterclaims is further reflected in this Court's Orders granting summary judgment against those claims which are incorporated herein by reference." But a claim does not lack merit merely because it was dismissed on summary judgment or nonsuit. *See Dike*, 343 S.W.3d at 192.

We conclude that Cruz did not satisfy his burden to show that CPLA filed groundless counterclaims in bad faith or for an improper purpose. Consequently, we further conclude that the trial judge abused his discretion by imposing sanctions against CPLA in connection with filing those counterclaims. We resolve issues four and five in CPLA's favor.

## CONCLUSION

We resolve issues one, two, three, four, and five in CPLA's favor and, as a result, do not reach issue six. We vacate the trial judge's November 1, 2012 sanctions order and render judgment that Cruz take nothing by his motion for sanctions.

/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE

121559F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CHERRY PETERSEN LANDRY ALBERT LLP, Appellant

No. 05-12-01559-CV          V.

ERWIN CRUZ, M.D., Appellee

On Appeal from the 101st Judicial District Court, Dallas County, Texas
Trial Court Cause No. 10-16274.
Opinion delivered by Justice Lang-Miers, Justices Francis and Lewis participating.

In accordance with this Court's opinion of this date, the trial court's November 1, 2012 sanctions order is **VACATED** and judgment is **RENDERED** that Erwin Cruz, M.D. take nothing by his motion for sanctions.

It is **ORDERED** that appellant Cherry Petersen Landry Albert LLP recover its costs of this appeal from appellee Erwin Cruz, M.D. The obligations of Travelers Insurance as surety on appellant's supersedeas bond are **DISCHARGED**.

Judgment entered this 26th day of August, 2014.