**REVERSE and REMAND; and Opinion Filed June 25, 2015.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-13-01024-CV

**MICHELLE KIM, Appellant/Cross-Appellee**
**V.**
**KUM SUN HENDRICKSON, Appellee/Cross-Appellant**

### On Appeal from the 191st Judicial District Court
### Dallas County, Texas
### Trial Court Cause No. DC-06-02872

## MEMORANDUM OPINION
Before Justices Evans, Brown, and Whitehill[1]
Opinion by Justice Brown

This appeal involves a long-standing dispute over a 1999 contract for the sale of residential real property. Seller Kum Sun Hendrickson sued buyer Michelle Kim seeking a declaratory judgment cancelling the contract, among other things. Kim counterclaimed, seeking a declaratory judgment that the contract is enforceable and asserting other claims. A jury trial ended in a mistrial on the court's own motion. Thereafter, Hendrickson moved for death penalty sanctions for discovery abuse and fraud. Kim filed a cross-motion also seeking death penalty sanctions for Hendrickson's allegedly false testimony at the trial. In its final judgment, the trial court granted both motions and ordered all claims and counterclaims dismissed with prejudice.

---

[1] Justice Bill Whitehill succeeded Justice Kerry FitzGerald, a member of the original panel, following Justice FitzGerald's retirement. Justice Whitehill has reviewed the briefs and the record before the Court.

Both parties appeal the judgment. For reasons that follow, we reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

Kim and Hendrickson entered into a written contract on July 21, 1999, for the sale of residential property on Royal Lane in Dallas. Kim agreed to buy the property, and Hendrickson agreed to sell it. The purchase price was $110,000. Kim's right to take possession was deferred two years to August 1, 2001. At that time, Kim was to make an $11,000 down payment. Hendrickson financed the $99,000 balance, which Kim was to pay in 180 monthly installments beginning September 1, 2001. The contract required Kim to pay the taxes on the property after August 1, 2001.

This is not the first lawsuit involving the parties' contract. Shortly after Kim was to take possession in 2001, Hendrickson sued her seeking a declaration that the contract was void. A jury returned a verdict in favor of Kim. In August 2004, the trial court signed a judgment ordering the contract to be specifically enforced. The judgment ordered that Kim shall have immediate possession of the property and make the payments set out in the contract beginning on September 1, 2004, and awarded her $15,000 in attorney's fees. Kim filed an eviction action against Hendrickson, and the justice court granted possession to Kim. Soon thereafter, Hendrickson filed for bankruptcy. The bankruptcy court later dismissed the case, finding Hendrickson filed it in bad faith. Kim did not take possession of the house until July 25, 2006.

Hendrickson filed this lawsuit in March 2006. Hendrickson sought a declaratory judgment cancelling the contract as a result of Kim's default or alternatively ordering Kim to cure the defaults. Hendrickson alleged Kim had failed to make the monthly payments and pay the property taxes. Hendrickson also asserted claims for breach of contract and for misappropriation of, or negligence with respect to, her personal property. Kim answered with a

general denial and affirmative defenses. Kim also counterclaimed for declaratory judgment, requesting declarations that the contract is valid and enforceable, she did not owe any prepossession payments due to Hendrickson's prior material breach or the doctrine of res judicata, and no postpossession payments are due or owing. Kim also sought to have the trial court declare the gross amount due from her to Hendrickson on the contract and also the net amount owing after offsets. Kim specifically asked the court to offset the unpaid judgment for attorney's fees in the prior litigation against the balance now due on the contract. Kim also asserted causes of action for Hendrickson's failure to provide annual accounting statements required by the property code and for breach of contract due to Hendrickson's failure to paint and clean the property and maintain the property in the condition it was in at the time the parties entered into the contract. She sought to recover other consequential damages resulting from the breach, such as storage fees and loss of use.

In 2010, the trial court issued an interlocutory summary judgment. Neither that judgment, nor the parties' summary judgment motions or responses, are part of our appellate record. A jury trial began in May 2012. Before jury selection, the court and the parties discussed what issues remained for the jury to resolve. The court indicated it had granted summary judgment against Kim on her claim for damages for the condition of the house. The parties determined they were going forward on whether or not Kim paid the 2006 property taxes and Kim's claims for the lack of annual accountings and for storage fees, as well as both parties' claims for attorney's fees.

Because the court had already granted summary judgment against Kim on her claim related to the condition of the house, it did not allow evidence relevant to that claim to come before the jury. Hendrickson made an offer of proof regarding a document Kim produced in discovery related to that claim. The document, marked KIM 1, purported to be a construction

–3–

estimate from U & H General Contractor to have painting and various repairs done on the property. The estimate contained a typed list of needed repairs with a dollar amount to indicate the repair cost. There were handwritten initials and dates next to most of the repairs. The total amount of the estimate was $34,155.

Outside the presence of the jury, Hung Ki Yi testified that in the past he had done business under the name U & H General Contractor. He had known Kim for about fifteen years, and she had offered him $300 in return for his creating the document. Although the document is dated September 20, 2006, Yi testified Kim asked him to create the estimate in 2008 or 2009. Yi never inspected the house on Royal Lane to determine what needed to be repaired. Yi did not type up the form and indicated that Kim came up with the various dollar amounts. Yi wrote his initials on the form. He indicated Kim also asked him to write in "paid" on the form (which he abbreviated PD) and dates to show when he was supposed to have performed the work. Yi never did any of the construction estimated on the form. Kim never paid him any amount, not even the $300 she had offered him.

On the third day of trial, the trial court declared a mistrial on its own motion, citing the parties' lack of preparation. About a month after the mistrial, Hendrickson filed a motion for sanctions for discovery abuse and fraud. Hendrickson asked for death penalty sanctions against Kim because she produced an allegedly fraudulent document, KIM 1, in response to discovery.

At a July 2012 hearing on the motion for sanctions, Hendrickson's former lawyer, Jack Jamison, testified that when he was working on the case, he received discovery responses from Kim's lawyer. Jamison identified KIM 1 as Kim's response to Hendrickson's first request for production, which had asked for any written estimates and proposals for painting the house on Royal Lane. During her deposition, Kim also indicated that KIM 1 showed she had paid cash for the work done to the house.

The court took judicial notice of the transcript from the earlier offer of proof. Hung Ki Yi testified again at the sanctions hearing similarly to his testimony for the offer of proof.

Kim also testified about the document. She had asked Yi if he could testify in court about an estimate for repairs at her house. She said Yi came to her house and looked at everything. She didn't pay Yi the $34,155 estimated. She only paid him $500 for installing a dishwasher. Kim agreed the document was "not the real one" because she never paid Yi. She gave the document to her lawyer and wanted to talk to him about it before trial, but he said he already submitted it. Kim testified she did not think she was asked about the document during her deposition. Counsel asked Kim if she was saying that she wanted to tell the judge that this was a mistake. Kim testified, "Yeah, this is so joke. . . . nobody would believe this." Kim explained, "Who's going to believe I'm going to pay - - I pay $34,000 to him?" Kim testified that she asked Yi if he would come up with an estimate that was half the price of another estimate she had. According to Kim, Yi created the document and came up with the numbers.

At the conclusion of the testimony, the trial court noted that, although not mentioned in Hendrickson's motion for sanctions, the document at issue was used by Kim as summary judgment evidence in April 2010. The court deferred ruling on the motion to allow the parties to supplement the record with a copy of Kim's deposition.

In August 2012, Kim filed her own motion for sanctions. Kim asserted death penalty sanctions should be imposed against Hendrickson because she fabricated testimony at trial to invent damages where none existed. Kim referred to Hendrickson's testimony that she paid the 2006 property taxes with a credit card. Hendrickson's counsel asked her if her credit card company had charged her interest on the tax payment she charged. Hendrickson answered affirmatively. She did not know how much interest she had been charged.

In October 2012, the trial court resumed the sanctions hearing. The parties sought to supplement the record with additional exhibits. No rulings were made on the pending motions. In April 2013, the trial court signed a final judgment in the case. The judgment recited that both Kim's and Hendrickson's motions for sanctions are well taken and granted death penalty sanctions against both parties. The court found that Kim fabricated a fraudulent document for use in this litigation to create damages that did not exist or could not be proved. The court noted the document was produced in discovery and used as summary judgment evidence. The court also found that Hendrickson falsely testified under oath with intent to deceive Kim and the court. The judgment further stated:

> The Court finds that both [Hendrickson and Kim] knowingly and willfully committed acts of fraud and deceit upon the Court. The Court has considered all possible sanctions and remedies for the parties' bad acts. The Court finds, however, that by their acts, [Hendrickson and Kim] have both shown a callous disregard for the truth and for the integrity of the legal system. The Court further finds that both [Hendrickson's and Kim's] conduct was in bad faith and in an attempt to subvert the truth. The Court finds that no lesser sanction would be appropriate for either [Hendrickson or Kim]. The Court finds that "death penalty" sanctions were intended for exactly this type of situation, where the improper conduct is knowing, willful and goes to the hearts [sic] of the merits of the case. The Court finds that these sanctions are fair, just and reasonable under the circumstances. The Court further finds that there is a direct nexus between the bad acts and the proposed sanctions and that the sanctions are not excessive and "fit the crime."[2]

The trial court struck both parties' pleadings and dismissed the case with prejudice as to all claims and counterclaims.

Both parties filed motions for new trial. At a hearing on the motions, Kim's attorney reminded the court that there had been an interlocutory summary judgment. Counsel represented the court had ruled in favor of Kim on her request for declaratory relief and argued that fact showed her declaratory judgment claim and attorney's fee claim had merit. The court asked if

---

[2] Findings of fact shall not be recited in a judgment. TEX. R. CIV. P. 299a. Neither party, however, raises this issue on appeal.

the sanctions ordered voided any relief it had granted in that interlocutory judgment. Kim's counsel said he thought it did. The court deferred ruling on the motions, stating it wanted to reread the summary judgment motion. Both motions for new trial were overruled by operation of law. This appeal followed.

**KIM'S APPEAL**

Kim raises two issues on appeal challenging the trial court's death penalty sanction against her. Kim does not argue that her conduct related to the construction estimate did not warrant any sanctions. Rather, she contends the sanctions imposed were improper because the trial court did not sufficiently consider lesser sanctions and because they were arbitrary and unreasonable.

Hendrickson sought sanctions under Texas Rule of Civil Procedure 215.3 and under the court's inherent power to sanction.[3] We review a trial court's ruling on a motion for sanctions under an abuse of discretion standard. *Cire v. Cummings,* 134 S.W.3d 835, 838 (Tex. 2004). The test for an abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action, but whether the court acted without reference to any guiding rules and principles. *Id.* at 838-39. The trial court's ruling should be reversed only if it was arbitrary or unreasonable. *Id.* at 839. We are not bound by the trial court's findings of fact or conclusions of law; rather, we must independently review the entire record to determine whether the trial court abused its discretion. *Am. Flood Research, Inc. v. Jones*, 192 S.W.3d 581, 583 (Tex. 2006); *see Imagine Auto. Group v. Boardwalk Motor Cars, Ltd.*, 430 S.W.3d 620, 631 (Tex. App.—Dallas 2014, pet. filed). At a sanctions hearing, the trial

---

[3] Her motion also sought sanctions under chapters 9 and 10 of the civil practice and remedies code, which involve sanctions for frivolous pleadings. As there is nothing in the record to indicate the trial court granted sanctions under these provisions, we do not consider these grounds.

court is the judge of the credibility of the witnesses and the weight to be given their testimony. *Imagine Auto. Group*, 430 S.W.3d at 640.

Texas Rule of Civil Procedure 215.3 allows a trial court to sanction a party for abusing the discovery process. TEX. R. CIV. P. 215.3. Producing false documents in discovery undoubtedly qualifies as abuse of the discovery process. *See JNS Enter., Inc. v. Dixie Demolition, LLC*, 430 S.W.3d 444, 453 (Tex. App.—Austin 2013, no pet.). Sanctions are used to assure compliance with discovery and deter those who might be tempted to abuse discovery in the absence of a deterrent. *Cire*, 134 S.W.3d at 839. In addition, courts also have inherent power to sanction to the extent necessary to deter, alleviate, and counteract bad faith abuse of the judicial process. *Cherry Petersen Landry Albert LLP v. Cruz*, 443 S.W.3d 441, 451 (Tex. App.—Dallas 2014, pet. pending).

A trial court may not, however, impose a sanction that is more severe than necessary to satisfy its legitimate purpose. *Cire*, 134 S.W.3d at 839. Sanctions must be just. There are two factors that determine whether a sanction is just. First, there must be a direct relationship between the offensive conduct and the sanction imposed. *Id.* In other words, a sanction must be directed at the abuse and toward remedying the prejudice caused the innocent party. *Id.* Second, a sanction must also not be excessive. *Id.* In other words, the punishment should fit the crime. Courts must consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance. *Id.* The trial court need not test the effectiveness of each available sanction by actually imposing the lesser sanction before issuing the death penalty; but the court must analyze the available sanctions and offer a reasoned explanation as to the appropriateness of the sanction imposed. *Id.* at 840; *Shops at Legacy (Inland) Ltd. P'ship v. Fine Autographs & Memorabilia Retail Stores, Inc.*, 418 S.W.3d 229, 233 (Tex. App.—Dallas 2013, no pet.). Case determinative sanctions may be imposed in the first instance only in exceptional

–8–

cases when they are clearly justified and it is fully apparent that no lesser sanctions would promote compliance with the rules. *GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding). Further, the imposition of death penalty sanctions is limited by constitutional due-process considerations because such a sanction adjudicates the merits of a party's claims. *TransAmerican Nat. Gas Corp. v. Powell*, 811 S.W.2d 913, 917–18 (Tex. 1991) (orig. proceeding). As such, death penalty sanctions are not appropriate unless the offensive conduct justifies a presumption the party's claims lack merit. *Id.* at 918.

Before the court issued death penalty sanctions against both parties, it had not imposed any prior sanctions in this case. We defer to the trial court's finding that Kim fabricated KIM 1 to create damages that did not exist or that she could not prove. The judgment recited that the court considered all possible sanctions for the Kim's acts and that no lesser sanction would be appropriate. The court also stated that death penalty sanctions were intended for this situation, where Kim's improper conduct was knowing and willful and went to the heart of the merits of the case. Despite these recitations, the record does not reflect the trial court analyzed any lesser sanctions. *See Shops at Legacy*, 418 S.W.3d at 234. Lesser sanctions can include monetary penalties, attorney's fees, contempt, or other punishment. *See Andras v. Mem'l Hosp. Sys.*, 888 S.W.2d 567, 572 (Tex. App.—Houston [1st Dist.] 1994, writ denied). The court did not mention or analyze lesser sanctions at the two sanctions hearings or at the postjudgment hearing on the parties' motions for new trial. Nor does its judgment mention any specific lesser sanctions it rejected. Further, to support imposition of death penalty sanctions, the court cited the fact that Kim's improper conduct went to the heart of the merits of the case. But the fraudulent estimate was entirely unrelated to the claims that went to trial. By the time of trial, the court had granted summary judgment against Kim on her claims based on the condition of the house. Part of Kim's case is based on the previous final judgment in her favor and the $15,000 in attorney's

fees awarded to her in that judgment. Kim is asking for an offset of the amount she owes under the contract for those unpaid attorney's fees. The fraudulent construction estimate has nothing to do with that claim.

Also, death penalty sanctions are not appropriate unless the offensive conduct justifies a presumption the party's claims lack merit. While the discovery abuse could justify a presumption Kim's claim related to the construction estimate lacks merit, such a presumption does not extend to her claims unrelated to the document. And the court had already determined that Kim's unrelated request for declaratory relief had merit. After examining the entire record, we cannot conclude that this is an exceptional case in which death penalty sanctions are clearly justified and it is fully apparent no lesser sanctions would promote compliance with the rules. We do not condone Kim's conduct; however, the trial court abused its discretion in imposing death penalty sanctions without considering lesser sanctions. Further, we conclude this error was harmful. *See* TEX. R. APP. P. 44.1(a). We sustain Kim's first and second issues.

### HENDRICKSON'S APPEAL

We turn to Hendrickson's appeal. In a single issue, she contends the death penalty sanction against her was not supported by the evidence and was clearly excessive and arbitrary. We agree the sanctions against Hendrickson were excessive.

In her cross-motion for sanctions, Kim asked the court to sanction Hendrickson for fabricating testimony at trial to create damages for credit card interest. The motion does not specify under what authority sanctions should be imposed. We presume the trial court did so under its inherent power to sanction.

At trial, Hendrickson testified that she made a payment for the 2006 taxes on the property with a credit card. She also testified that her credit card company charged her interest on the tax

–10–

payment she charged. She did not know how much interest she was charged.[4] Kim attached to her motion for sanctions a business records affidavit from the litigation manager for the Dallas County Tax Office. According to the affidavit, county records indicate Hendrickson paid the 2006 taxes for the Royal Lane property in part with cash ($1,500) and in part with a check ($439.52). Hendrickson does not dispute that her testimony about the method of payment was erroneous.

Again, we defer to the court's finding that Hendrickson testified falsely under oath with an intent to deceive. Even so, we conclude the death penalty sanction against Hendrickson was excessive. To be just, sanctions must not be excessive and the punishment must fit the crime. *Cire*, 134 S.W.3d at 839. One of the issues in this case was whether Kim breached the contract by failing to pay the 2006 property taxes. The "crime" was the fact that Hendrickson testified that in January 2007, she made the 2006 property tax payment with a credit card, when in fact, she made the payment with cash and a check. Any damages for credit card interest would have been minimal. And Hendrickson could not remember how much interest she was charged. As no prior sanctions had been imposed for Hendrickson's conduct before the death penalty sanction, we consider whether this was such an exceptional case that it was fully apparent no lesser sanction would be appropriate. We find it was not. Hendrickson's method of payment was not a material issue in the case, and thus the record does not support the trial court's finding that this testimony went to the heart of Hendrickson's case. To strike Hendrickson's entire case over a discrepancy about the method by which she paid the taxes was an abuse of discretion. This error was harmful. *See* TEX. R. APP. P. 44.1(a). We sustain Hendrickson's issue.

---

[4] We note that Hendrickson testified at trial through a Korean interpreter.

–11–

We reverse the trial court's judgment and remand the cause for further proceedings consistent with this opinion.

/Ada Brown/
_____
ADA BROWN
JUSTICE

131024F.P05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHELLE KIM, Appellant/Cross-Appellee

No. 05-13-01024-CV      V.

KUM SUN HENDRICKSON,
Appellee/Cross-Appellant

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-06-02872.
Opinion delivered by Justice Brown. Justices
Evans and Whitehill participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for further proceedings.

It is **ORDERED** that each party bear her own costs of this appeal.

Judgment entered this 25th day of June, 2015.